GIBLER, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, February 4, 1908.

1. NEGLIGENCE: Pleading: Specific Acts of Negligence. In an action by a member of a bridge gang against his employer, a railroad company, for injuries received while being transported on defendant's train to the place where he was going to work, where the petition alleged that the train crew carelessly permitted the train to become uncoupled severing the connection of the air brakes, thereby causing a sudden shock which threw plaintiff from the car upon which he was riding, a prima-facie case was made out by proving the accident and by testimony to

Gibler v. Railroad.

show the train was very roughly handled; the charge of negligence not being general but specific, proof of the accident alone would not make out a prima-facie case.

2. ———: Instruction: Several Acts of Negligence Conjunctively Stated. In an action for injuries to plaintiff caused by the negligence of the defendant, where several acts of negligence were charged, but evidence introduced to support only one, an instruction submitting to the jury all the charges of negligence connected conjunctively, so that they were required to find all of the acts charged were committed in order to find for plaintiff, was favorable to the defendant and not an error of which it could complain.

3. ———: ———: Contributory Negligence: Master and Servant: Custom. In an action for personal injuries by an employee against his employer, where the defense of contributory negligence is pleaded, the fact that the plaintiff pursued a general custom tolerated by the employer in doing the act claimed to be negligent, would not necessarily be decisive of the question whether he was negligent.

4. ———: ———: ———: Commentary on Evidence. In an action for injuries to plaintiff caused by the negligence of defendant, an instruction on the issue of contributory negligence which singled out certain facts for emphasis, leaving out of view other relevant facts which tended to show contributory negligence, was reversible error.

5. DAMAGES: Expert Testimony: Physician's Opinion of Patient's Condition: Subjective Examination. In an action for damages for personal injuries, a physician may give in evidence his expert opinion of the condition of the plaintiff and in so doing may testify not only as to what he observed in the condition of the patient, but what the patient told him about the present symptoms.

6. ———: ———: ———: Hearsay. But a physician in giving his opinion of a patient's physical condition should not give such opinion based on the history of the case as related by the party, nor should he state what the party told him as to the history of the case, because that would be hearsay.

Appeal from Knox Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

Reversed and remanded.

*O. D. Jones* and *J. G. Trimble* for appellant.

(1)	It was error to allow Doctors Morris and Jurgens to testify as to their opinion of plaintiff's condition from their subjective examination of him. The statements upon which they based this opinion were made by plaintiff at the time of an examination, was not before the court, and was not sworn to. In Livery Co. v. Railroad, 105 Mo. App. 556, the St. Louis Court of Appeals quotes approvingly from State v. Bowman, 78 N. C. 509; Taylor v. Railroad, 185 Mo. 239. (2) There is no evidence of negligence upon which to base plaintiff's instructions 1 and 2. Defendant's instruction No. 1 refused should have been given. Cooley on Torts (2 Ed.), p. 572; Wencker v. Railroad, 169 Mo. 598; Railroad v. Kenney, 41 Mo. 271; Perse v. Railroad, 51 Mo. App. 171; Breen v. Cooperage Co., 50 Mo. App. 212; Young v. Railroad, 93 Mo. App. 274. (3) Plaintiff would not have been injured if he had not taken the exposed position he did. If he had been in the bunk car, the one provided by the company for him to ride in, he would have been safe. His own negligence caused his injury. "The rule that the negligence of the plaintiff which contributes directly to the cause of the injury will prevent a recovery is without an exception or qualification." Hogan v. Railroad, 150 Mo. 55; Guffey v. Railroad, 53 Mo. App. 468.

*Balthrope & Smith* and *F. H. McCullough* for respondent.

"Where the thing is shown to be in the management of defendant or his servants and the accident is such as, under an ordinary course of things, does not happen, if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by defendant, that the accident arose from want of proper care." Clark v. Railroad, 127 Mo. 210; Gallagher v. Edison Illuminating Co., 72 Mo. App. 576;

Madden v. Railroad, 50 Mo. App. 676. Appellant contends that respondent placed himself in a dangerous position and thereby contributed to the injury complained of, and for that reason it is not liable. This contention was fully and fairly presented to the jury under instructions No. 2, given on the part of plaintiff, wherein they were instructed that if they believed from the greater weight of the evidence, that plaintiff was riding in a place where he and his colaborers had been directed to ride, and further that it was as safe as in the bunk or dining car, also used by them, then he was not guilty of contributory negligence and under which instruction the jury found from the greater weight of the evidence that respondent was not guilty of contributory negligence, which was a question of fact, for the jury to pass upon. The jury had full description of both the place where appellant was when the accident occurred and where some of the bridge gang were on the train in the bunk car, which was ample evidence upon which to base their findings, of no contributory negligence on part of respondent as they did. Linder v. Transit Co., 103 Mo. App. 574; Tanner v. Railroad, 164 Mo. 180; Flynn v. Railroad, 78 Mo. 212; Buesching v. Railroad, 73 Mo. 229; Riska v. Railroad, 188 Mo. 188.

GOODE, J.—Plaintiff while a member of a carpenter and bridge gang of employees in the service of defendant company, was hurt January 19, 1906, by a fall from a car and instituted this action to recover damages for the injury. On the day named plaintiff and his gang, which had been working at Edina, a station on defendant's line, started to Brashear, another station twelve miles west of Edina. A construction train consisting of three cars accompanied the bridge crew. One of the cars was used for the carriage of material, another for tools and the third as a "bunk" and dining car. The latter was a box or inclosed car, but the other

two were open flat cars. This construction train was taken up by a freight train which passed Edina going west, and attached near its rear end, say from five to seven cars from the caboose. The freight train was a very long one, consisting of sixty or more cars and, in truth, was about the length of two ordinary trains and was drawn by two engines. Both the engines were at the front of the train, but separated by a freight car. Six men, including the foreman, composed the crew of which plaintiff was a member. On taking passage for Brashear the foreman and two other members of the crew rode in the bunk car, but plaintiff and two others preferred to ride on the tool car and plaintiff stood instead of sitting while the train was moving. This tool car, though not inclosed, had a board around the sides, and at one end stood a tool house in which the tools of the bridge gang were carried. The railroad track west of Edina is uneven and with rather sharp rising and falling grades. In going down a grade, just as the engines had completed the descent and were ascending the next rise, which was short, the train broke in two, its separation being occasioned by the uncoupling of the two cars near the front. One consequence of the mishap was the portion of the train equipped with airbrakes stopped suddenly on account of the brakes setting automatically, while the cars to the rear continued to move forward under their momentum and crashed into the stationary part with the violence, one witness said, of two engines colliding. No serious damage was done to the train, which was recoupled and continued its trip. But when the rear section ran into the front section, the impact threw plaintiff, who was standing on the tool car, over the side of the car to the ground. He struck on his head and shoulders and was hurt, and would have fallen between the cars if another member of the crew had not grabbed his coat, thereby swinging him over the side

of the car. Plaintiff went with his crew and worked the remainder of the day, returned home on a hand car in the evening and did not resume work for nineteen days afterwards. He consulted a physician about his injuries who found a bruise on his left shoulder; a swelling there and on the left arm, and difficulty in moving the arm, indicating certain muscles were injured. Plaintiff was treated for the injury, which the physician thought was a rupture of the muscles about the shoulder. During the trial the court appointed two physicians to make a physical examination of plaintiff, in order to ascertain what his condition was then—about a year after the accident. These physicians testified they found no external indications of an injury to the left shoulder and arm or the muscles thereabout; that their examination was both subjective and objective; meaning by the latter term an examination made by using their own senses, and by the former, listening to the history of the injury and previous symptoms narrated by plaintiff and his statement of his present symptoms. One of these physicians, Dr. Morris, while testifying they found no external signs of injury, said, from the questions they asked plaintiff and the responses received, he supposed plaintiff had an injury of the deltoid muscles and a detachment of the pectoralis major; muscles in the region of the shoulder and arm. But in connection with these statements, Dr. Morris said one could see his arm pained him when it was moved. On being asked if plaintiff claimed or pretended his arm hurt him, the doctor said: "It looked like it hurt him." Another physician appointed to make the examination, Dr. Jurgens, based his opinion exclusively on statements of plaintiff as to the pain felt in making certain motions with his arm. He agreed with Dr. Morris regarding the rupture of the muscles. Both physicians united in saying that by good treatment there might be a complete recovery and no permanent injury. Dr. Pugh, the physician who attend-

ed plaintiff shortly after he was injured, was present at the examination by the physicians appointed by the court and assisted them. While treating plaintiff Dr. Pugh came to the conclusion the tendons and ligaments about the shoulder were ruptured to some extent and his testimony regarding his conclusion at the time of the trial, from the examination in which he then participated, is equivalent to saying plaintiff would need good treatment and prolonged rest to recover permanently. He swore that when the examination was made, plaintiff complained of pain in moving his arm, and appears to have based his opinion as to the condition plaintiff was in then on the latter's statement of present symptoms.

Three assignments of negligence are made in the petition. Defendant and its officers and servants in charge of the train, had carelessly and negligently permitted the air brakes attached to the engine and cars, to become defective and unsafe; the engineers and servants in charge of its engines, wantonly and carelessly ran the same at a high and dangerous speed immediately after the train left Edina; and while the train was running under such speed, and as it approached the crest of a steep grade, the engineers and servants in charge of the engines, negligently and carelessly permitted the two engines to become uncoupled and separated from each other, thereby throwing on the air brakes and causing a sudden shock to the car on which plaintiff was, which threw plaintiff to the ground with great force and violence. A witness said the engineers handled the train very roughly. The three cars of the construction train were not equipped with air brakes, and there was testimony that the separation of the train broke the connection of what air brakes were on the cars in the rear section so they would not work; whereas those on the fore part of the train worked just as they were expected to do, setting automatically and checking the movement of the cars with which they were connected. We find

testimony that the conductor warned the members of the bridge crew who were riding on the tool car, to go inside the bunk car or they would get knocked down; and one of the crew (Forester) told plaintiff the latter ought to go in the bunk car, but plaintiff said it was as safe on the tool car as anywhere else. A verdict was returned in plaintiff's behalf for $500 and judgment having been entered for the amount, defendant appealed.

1. It is insisted there was no proof of the acts of negligence assigned and the court erred in refusing to direct a verdict in defendant's favor. We find no proof tending to show the officers and servants of the company had permitted the air brakes to become defective and unsafe or allowed the train to be run at a reckless or wanton speed. There is not a trace of evidence to support those charges. So far as appears the air brakes were in good order and did their work well. The witnesses placed the speed of the train at from twenty to thirty miles an hour, but none swore this speed was unusual or dangerous. Sufficient evidence to go to the jury was introduced in support of the charge of negligence in respect of carelessly permitting the train to become uncoupled. As laid in the petition the charge is that the engines became uncoupled; whereas the proof indicates the separation occurred behind the engines and between two of the cars; but this discrepancy is immaterial. The essence of the charge is this: the crew of the train, particularly the engineers, carelessly permitted the train to become uncoupled, severing the connection of the air brakes, thereby causing a sudden shock which threw plaintiff to the ground. Plaintiff did not prefer a general charge of negligence in handling the train, but stated specific acts of negligence and hence was called on to prove them. If his charge of negligence had been general, likely proof of the accident would have made a prima-facie case. [Feary v. Railroad, 162 Mo. 75, 96, 62 S. W. 452.] The occurrence of the accident,

while it may bespeak negligence, does not prove the negligence was in the particular acts charged. But there was positive testimony to prove the train was very roughly handled, which tended to prove the third averment of negligence, and we overrule the assignment of error based on the court's refusal to order a verdict for defendant.

2. Complaint is made of the first instruction given for plaintiff, on the ground of a lack of evidence to support it. Said instruction submitted to the jury all the charges of negligence made in the petition and, as said, there was no evidence of two of them. But as the instruction was drawn in the conjunctive, and required the jury to find defendant guilty of all the acts of negligence charged as the condition of a verdict for plaintiff, the instruction was favorable to defendant rather than adverse; inasmuch as it imposed on plaintiff the duty of proving more than the law required in order to make a case. [LaForce v. Insurance Co., 43 Mo. App. 518, 533.]

3. In the second instruction granted for plaintiff, the jury were told if they believed the car on which plaintiff was riding was furnished by defendant, and was a car on which plaintiff and the other carpenters and bridge builders were accustomed to ride with the consent of the foreman, while going to and from their work, and said car was as safe as the dining car, then plaintiff had a legal right to ride on said car, and by doing so was not guilty of contributory negligence. This instruction must be condemned for unduly emphasizing certain facts in eivdence which bore on the issue of contributory negligence, and leaving out of sight other facts just as important. In the first place we do not see that the consent of the foreman of the bridge crew for the members of the crew to ride on the tool car instead of inside the dining car, would necessarily affect the question of contributory negligence. A general custom, tolerated by de-

fendant, and not merely by the foreman of a crew, under which members of the crew rode on flat cars instead of in the dining car, would cut off the defense that an employee injured while on the flat car had violated a rule of the company in riding there. But even such a custom might not be decisive in all cases of the question whether the employee was careless in taking the position. In the present instance the train was one of almost double the usual length and possibly more liable to accidents than an ordinary train. There may have been more danger attached to riding on a flat car in this train than is usually incident to riding there. And the warning of the conductor to the three men who were on the tool car, to go inside or they would be in danger of being knocked down, is to be considered, as is the warning of Forester to plaintiff; both of which warnings plaintiff disregarded. We have, too, the fact that instead of sitting, plaintiff persisted in maintaining a standing position and he alone, of all the persons on the train, was injured by the collision. All these facts bearing on the issue of contributory negligence, were left out of view in the instruction given for plaintiff on said issue, and the propriety of plaintiff's conduct was made to depend solely on the facts predicated in said instruction. Instructions which single out facts for emphasis or leave out of view other relevant facts, are erroneous. [Chouquette v. Barada, 28 Mo. 491; Railroad v. Stock Yards, 120 Mo. 541, 25 S. W. 399; Mead v. Brotherton, 30 Mo. 201; Lafayette Bank v. Metcalf, 29 Mo. App. 384; Crews v. Lackland, 67 Mo. 619.] It was for the jury to find on all the relevant evidence whether plaintiff, in riding where he did and keeping a standing position, fell short of taking ordinary care for his own safety. It is true the given instruction required the jury to find the flat car was as safe as the bunk car; and inasmuch as the jury were bound by this clause to find plaintiff would not have increased his safety by going inside the bunk car, it is

insisted said instruction is sound. It is practically certain plaintiff would not have been hurled to the ground if he had been in the inclosed car; but putting aside the question of whether the jury were entitled to find against what looks like a physical fact, it is to be remarked that possibly the flat car might be as safe as the bunk car sometimes yet not as safe on this particular occasion on account of the unusual length of the train. Moreover, even this phase of the instruction excluded from consideration, as a factor in determining the character of plaintiff's conduct, the circumstance of his remaining erect instead of sitting down. As said, no one but him stood and no one else was hurt.

4. Complaint is made of the court's ruling permitting the physicians to give testimony regarding the condition plaintiff was in at the time of the trial, based on a subjective examination; that is to say, on plaintiff's statement of symptoms then existing and the history of the case he gave. In strictness this objection is hardly applicable to the testimony of either of the physicians. Dr. Morris' opinion was given, not only on the information derived from plaintiff, but on the appearance of pain exhibited by plaintiff in moving his arm; and we may say here, that on the authorities cited infra, if Dr. Morris can form no opinion of plaintiff's present state without considering the history of the case and prior symptoms as related by plaintiff, then his opinion is incompetent evidence. Dr. Pugh's testimony was based on the knowledge of the case acquired in treating it, and also on the examination conducted during the trial. In so far as it was based on the latter, it contained only the statement that plaintiff would need a long rest and good treatment to recover permanently. The rule of law involved in the exception to this expert testimony is examined with discrimination and care in that well-tested repository of sound law, Greenleaf on Evidence, vol. 1, sec. 162, of the sixteenth edition. The rule stated in this treatise and

accepted by most courts, if not all, is that a physician may give in evidence his expert opinion of the condition of a patient, founded on his observation or on the patient's statement of present subjective symptoms, or both, and in giving his opinion, the physician may testify not only of what he observed, but what the patient told him about present symptoms. But admissible statements of symptoms by the patient are those relating to present symptoms, and not such as are in the nature of a narrative of his past condition. In other words a physician cannot repeat in testimony the history of the case given him by the patient during the examination. Neither in this state can a physician testify to an expert opinion based on a narrative of what has transpired in the past in the case. A leading authority on the subject wherein the law is expounded as we have stated it, is Insurance Co. v. Moseley, 8 Wall. (U. S.) 397. The question was considered, and many decisions reviewed in Holloway v. Kansas City, 182 Mo. 19, wherein it was ruled the statements of a litigant to a physician about the litigant's past physical condition, were mere hearsay and the physician could not even consider them in giving his opinion about the party's physical state at the time of the trial. It follows from this authority, that no testimony should be received regarding what plaintiff said to the physicians concerning his past suffering, and neither should an expert opinion be received in evidence if it is based on a history of the case related by the plaintiff. It was proper for Dr. Jurgens to state on the witness stand his opinion based on what plaintiff said about the pain he felt at the time of the examination and in connection therewith report plaintiff's statements that he (plaintiff) suffered pain in moving his arm at the time the examination occurred. What Dr. Jurgens testified was this: "Judging from the pain he (plaintiff) says he has, I would say the deltoid muscle was injured, probably torn loose, and that the triceps was injured to a

certain extent; slightly damaged." According to the authorities supra, said testimony was competent.

5. We may say in passing there was no evidence of any permanent injury to plaintiff, nor did the court, in the instruction on the measure of damage, permit an assessment of damages for permanent injuries.

For the error in giving the instruction for plaintiff on contributory negligence, the judgment is reversed and the cause remanded. All concur.