JOHN GIBLER, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 17, 1910.

1. NEGLIGENCE: Pleading: Res Ipsa Loquitur: Effect of Pleading Specific Negligence. By pleading specific acts of negligence, plaintiff asserts his ability to prove the same as laid, and for that reason he is required to do so, even though the doctrine of *res ipsa loquitur* might apply under a general allegation unaccompanied by averments of such specific acts.

2. MASTER AND SERVANT: Railroads: Negligence: Injury to Servant: Specific Negligence not Presumed from Uncoupling of Train. In an action against a railroad company by a servant for personal injuries, evidence that a train upon which plaintiff was riding became uncoupled, causing a sudden and violent shock which threw plaintiff over, in no manner tends to support a specific charge that the engineer was so remiss in his duty as to occasion the uncoupling.

3. NEGLIGENCE: Railroads: Res Ipsa Loquitur: Doctrine Applies When. The doctrine of *res ipsa loquitur* applies where it appears a railroad train is under the management of defendant and the accident is such as in the ordinary course of events does not happen if those managing the conveyance use proper care; the accident under such circumstances affording reasonable evidence, in the absence of explanation of defendant, that it arose from want of care on the part of defendant.

4. MASTER AND SERVANT: Railroads: Negligence: Res Ipsa Loquitur: Fellow-Servants. The mere fact that the plaintiff is a servant of the defendant will not prevent the application of the doctrine of *res ipsa loquitur* in an action for personal injuries against a railroad company by one of its employees, especially in view of section 2873, Revised Statutes 1899, which abrogates the doctrine of fellow-servants as to railroad employees.

5. ———: ———: ———: Fellow-Servants: Who Are Within Statute. One repairing bridges for a railroad company, if injured while in the line of duty, though not actually engaged in work on a bridge, is within the scope of section 2873, Revised Statutes 1899, abrogating the doctrine of fellow-servants as to railroad employees.

6. ――――: ――――: ――――: Res Ipsa Loquitur Applies to Facts Stated. The uncoupling of a freight train while running at a rate of twenty or twenty-five miles an hour is such an unusual and extraordinary occurrence as to bespeak the want of due care on the part of defendant in some respect or somewhere; but it does not tend to prove negligence on the part of the engineer so as to sustain a specific averment of negligence on the part of the engineer, charged in the petition.

7. NEGLIGENCE: Pleading: Res Ipsa Loquitur: Effect of Pleading General and Specific Negligence. Where there is a general allegation in the petition as to the negligent breach of duty, accompanied by averments of specific acts of negligence touching the same subject-matter, the rule of *res ipsa loquitur* will not apply, for by going into the specification of negligent acts, plaintiff has shown his familiarity with the grounds of liability involved and indicated not only his purpose but his ability to prove the same as laid.

Appeal from Knox Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

REVERSED.

*O. D. Jones* and *J. G. Trimble* for appellant.

(1)  Plaintiff's instruction one is erroneous.  (a) In instruction number 1, the court declares that plaintiff was a passenger. He was riding free and the defendant was paying him for his services at the time he was upon the train. He worked in the forenoon, he worked that afternoon, he was an employee and not a passenger. He comes within the rule laid down by this court in St. Clair v. Railroad, 122 Mo. App. 519. (b)  Plaintiff charges specific acts of negligence, towit: The engineers ran the train recklessly, wantonly, carelessly and negligently at a high and dangerous rate of speed; and negligently and carelessly permitted the engines to become "uncoupled." On this very same evidence, the court, in reversing and remanding this case (129 Mo. App. 93), declared there was no evidence that the speed was unusual or dangerous, and that there was

no evidence that the engineers were reckless and negligent. In instruction number 1 the court omits the charge that the engineers negligently permitted the train to become uncoupled, but says that if the engineers carelessly and negligently handled the engines so as to cause a sudden and terrific shock, the company is liable. It is true plaintiff attempted to make a general charge of negligence in the handling of the train, but he preceded that with specific charges, and the general charge must give way to the specific ones, and, as held by this court on the former hearing, the instruction leaves out the act of negligence charged in the petition. (2) It was error to refuse instructions 1 and 2, asked by the defendant and refused by the court. (a) In the first instruction, the defendant asked the court to declare as a matter of law that there was no evidence that the engineers handled the train recklessly, wantonly, carelessly and negligently. There was no such evidence. Plaintiff relied entirely upon the happening of the accident without any proof that the engineers were responsible for it, and there was direct, positive evidence from several witnesses that the uncoupling, or breaking in two of the train, was a common occurrence over which the engineer has absolutely no control. "When there is no evidence as to a given point, the court properly instructs to that effect." Ryan v. Kelley, 9 Mo. App. 592. (b) The court should have given instruction number 2 for the reason that it submitted to the jury the question of plaintiff's negligence in taking an exposed position. Plaintiff not having covered the question of his own negligence (which was the defense in the case), the court should have given an instruction asked by defendant based upon plaintiff's negligence. The case comes to the court now with the same infirmity it had before when this court held that plaintiff's instruction was erroneous in not submitting to the jury the question of his negligence.

*G. R. Balthrope, C. M. Smith* and *F. H. McCullough* for appellant.

(1) The case of Gibler v. Railroad, 129 Mo. App. 93, is the law of this case. Every instruction given by the court on behalf of plaintiff was approved by GOODE, J., in his well written opinion upon the first appeal, the entire court concurring. (2) The charge of negligence in the case, is general as well as special, and where a general charge of negligence is preferred, then proof of the accident makes a prima facie case. Gibler v. Railroad, 129 Mo. App. 100; Feary v. Railroad, 162 Mo. 75, 96; Briscoe v. Railroad, 222 Mo. 104.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of the alleged negligence of defendant. Plaintiff recovered and defendant appeals.

It appears plaintiff was one of a party of six engaged in defendant's service as bridge carpenters. On the day of his injury, plaintiff, together with his companions, had been working adjacent to the city of Edina. Defendant had furnished the bridgemen three cars to be used in connection with their duties. One of these cars was an ordinary freight car containing bunks for sleeping purposes, cooking utensils, tables, chairs, etc., and was known as the "bunk" and "dining" car. Another was a freight car on which they transported materials necessary to the repair of bridges. The third was what is known as a flat car and was used by plaintiff and his companions as a conveyance for their tools and some supplies.

It becoming necessary for the party to remove from Edina to the town of Brashear, the three cars mentioned were included in one of defendant's trains for that purpose. As the two towns mentioned are situate a short distance apart, plaintiff and two of his companions took passage on the flat car used by them as a conveyance for their tools instead of going into the other known as

the "bunk" car. The train into which the three cars of the bridgemen were taken seems to have been a very long one, consisting of about sixty cars in all. It was propelled by two locomotive engines. Thus made up, it constituted what is commonly known among railroad men as a "double header." Instead of the two locomotives being connected, however, they were separated by a freight car between them, and the two engines, thus separated, were drawing the long train in question.

Immediately upon leaving the city of Edina to the westward is a heavy grade on defendant's road. After passing the summit of this, the train descends another considerable grade into a swale on the roadbed and then comes another grade to the westward. The three cars of the bridgemen were placed in the train near the rear end thereof and, as stated, plaintiff, in company with two of his companions, was standing on the flat car which they used as a conveyance for their tools and a few supplies. The plaintiff stood a few feet from the forward end of this car as the train progressed westward and his fellow workman, Montcrief, was close by his side. After passing over the summit of the first grade west of Edina, the train descended the incline to the swale of the track with considerable rapidity, and upon the forward part thereof ascending the next grade to the west it became uncoupled between the two locomotives. Just where or how this uncoupling occurred does not appear but it is said in the proof that it was between the two locomotives which, as before stated, were separated only by a freight car. The entire train as far back as the cars occupied by the bridgemen was equipped with airbrakes so that they worked automatically upon the occurrence of the uncoupling mentioned. It appears that instantly upon the forward locomotive becoming uncoupled from the remainder of the train the brakes were automatically set on all of the cars back to the one on which plaintiff and his companion were riding. Of course, this produced a sudden and

violent stoppage of the train without warning. The three cars used by the bridgemen were not equipped with air, hence including them in the train operated to dissever the current, so that the half dozen cars in the rear ran forward as though no brakes were attached. The result was such a sudden and violent shock as to precipitate plaintiff immediately forward off of the flat car on which he was standing. It is said that he would have fallen on the rail of the track except for the fact that Montcrief, his companion, laid hold of his coat with his hand in an effort to prevent a catastrophe and thus directed his fall to the side of the railroad embankment. Plaintiff fell with great force upon his neck, shoulder and arm, and the testimony is that he received a painful injury which may prove to be permanent.

Besides containing a general allegation of negligence in operating the train, the petition contains two specific allegations as to the negligent acts relied upon. The case was here on a former appeal and is reported Gibler v. Q. O. & K. C. R. Co., 129 Mo. App. 93, 107 S. W. 1021. The petition before us on the former appeal was in part the same as the one now in judgment except for the fact it contained an allegation to the effect the airbrakes were defective and unsafe. After the case was remanded, the present amended petition was filed and the averments touching the matter of defective and unsafe airbrakes omitted. Otherwise the pleading predicates upon the same grounds of negligence as theretofore and a general allegation of negligence is included. In the present petition it is averred, first, substantially that defendant was negligent in recklessly, wantonly, carelessly and negligently running its train at a high and dangerous rate of speed. It may be said of this allegation, however, that although it abundantly appears the train was being operated at from twenty to twenty-five miles per hour, there is not a scintilla of proof that such was a dangerous rate of speed. Indeed, this allegation of negligence is not only unproven but was aban-

doned by the plaintiff at the trial, for it appears that he requested the court to refer to the jury only the question of negligence touching the conduct of the two engineers. This being true, we will omit further notice of the specification of negligence as to a dangerous rate of speed. The second specification of negligence relied upon in the present petition relates to the conduct of the two engineers in operating the train, and proceeds to aver that they were remiss in respect of their duty in such manner as to occasion the uncoupling which operated to automatically set the brakes and hurl plaintiff to his injury. Touching this matter, it is averred "said engineers, agents and servants of defendant, in charge of said engines and train of cars of defendant, negligently and carelessly permitted said two engines to become uncoupled and separated from said train of cars and from each other, thereby severing the airbrake connections between said engines and said train of cars," etc. As before stated, the other allegation is general in character and relates to the agents and servants of defendant in charge of the engines and train, etc. It charges that they so negligently handled and operated the engines and train as to cause a terrific shock and jar, etc.

When the cause was here on the former appeal, the court entertained some doubt as to whether or not plaintiff has shown a prima facie right of recovery. As before stated, the petition in judgment then pleaded several specific acts of negligence. Upon carefully examining the proof, it was ruled wholly insufficient on all of the specifications but one and that was the charge that the engineers carelessly, etc., permitted the train to become uncoupled. It appeared that one witness, Forrester, testified on that trial the engineers handled the train very roughly. On this statement of one witness, a mere scrap of testimony, considered together with the circumstances of an exceedingly long train

148 App—31

drawn by two locomotives separated by a car between, we expressed the opinion that a prima facie case was made for the jury as to whether or not the engineers were remiss in their conduct. It was said, too, on that appeal, that if plaintiff's charge of negligence had been general, likely proof of the accident alone would have made a prima facie case, but as he did not prefer a general charge of negligence in handling the train, it therefore devolved upon him to prove the specific acts of negligence laid in the petition. See Gibler v. Q. O. & K. C. R. Co., 129 Mo. App. 93, 107 S. W. 1021.

It is to be inferred from subsequent conduct of counsel in amending their petition so as to include a general allegation of negligence that they sought to so form the pleadings as to invoke the doctrine of *res ipsa loquitur*. Such was a proper course to pursue and would no doubt have prevailed, had the averments of specific negligent acts been omitted from the amended petition. [Briscoe v. Met. Street Ry. Co., 222 Mo. 104, 120 S. W. 1162.] The inference that counsel included the general allegation of negligence in the amended petition with a purpose to invoke the doctrine of presumptive negligence is re-enforced from the fact that it appears they wholly omitted to introduce any evidence whatever on the present trial tending to show the specific negligent acts charged against the engineers or those in charge of the train and now rely upon the doctrine of *res ipsa loquitur*. Indeed, it is argued here that as the present petition contains a general allegation of negligence in addition to the specific charges mentioned plaintiff was not required to prove more than the fact of the accident and the circumstances of the case to make a prima facie showing of liability. And it is said such is the law of this case as determined on the former appeal. No such question was presented when the case was here before and no such judgment was given. The case then before the court was one predicated upon three charges of specific negligence and

Gibler v. Railroad.

it was ruled that as plaintiff had seen fit to specify the negligent acts relied upon, it devolved upon him to prove the same. In other words, in that state of the pleading, it was ruled the doctrine of *res ipsa loquitur* could not be invoked, and in the course of the opinion it was merely remarked that had the allegations of negligence been general, instead of specific, the fact of the accident likely would have made a prima facie case. There is not a word in the opinion on the former appeal which goes to indicate that plaintiff might aver in his petition the specific acts of negligence relied upon together with a general charge touching the same matter and then invoke the doctrine of *res ipsa loquitur*. Indeed, all of the authorities in this State with which we are familiar are to the effect that by pleading specific acts of negligence the plaintiff thereby asserts his ability to prove the same as laid and for this reason he is required to do so even though the doctrine of *res ipsa loquitur* might apply under a general allegation unaccompanied by averments of such specific acts.

There is no proof in the present record tending to establish any specific act of negligence against the engineers or any other person for that matter. The few words of the one witness to the effect that the engineers handled the train very roughly, which, together with the circumstances of the long train and two locomotives, we determined to be sufficient prima facie on the prior appeal, are not to be found in the testimony given at the last trial. There is testimony to the effect that the train became uncoupled as detailed above and that this occasioned a sudden and violent shock which precipitated plaintiff forward to his injury. But this testimony in no manner tends to support the specific charge that the engineers were remiss in their duty so as to occasion the uncoupling and no specific charge is laid against any other of defendant's agents. In a manner, plaintiff concedes the insufficiency of the testimony to establish the specific negligence alleged and seems to

rely entirely upon the doctrine of *res ipsa loquitur*. The doctrine of *res ipsa loquitur* applies in proper cases where it appears the train is under the management of the defendant and the accident is such as in the ordinary course of things does not happen if those managing the conveyance use proper care. In such circumstances, it affords reasonable evidence in the absence of explanation by defendant that the accident arose from a want of care on the part of defendant. In other words, in those circumstances the occurrence itself affords a presumption sufficient as prima facie proof of the fact of some negligence. [Mitchell v. Chicago & Alton Ry. Co., 132 Mo. App. 143, 112 S. W. 291; Trotter v. St. Louis & Suburban Ry. Co., 122 Mo. App. 405, 99 S. W. 508.] Except for the state of the pleading which now precludes it, there is no good reason why the doctrine should not apply in the circumstances of this case even between master and servant, especially in view of our statute abrogating the old doctrine of fellow service as to railroad employees. It seems the only sound and intelligent reason which may be given for precluding the application of the doctrine *res ipsa loquitur* as between master and servant in a proper case is that although the occurrence bespeaks negligence as to some one or some where, it does not of itself exclude the idea that the negligent act is that of a fellow-servant for whose conduct the master is not answerable. In other words, as between master and servant, though the occurrence of itself indicates a want of ordinary care, it does not necessarily point the negligence of some person superior in authority or in respect of a defect in construction for which the master should respond notwithstanding the doctrine which obtains exempting him for the negligent acts of fellow-servants which an employee assumes. An instructive opinion by a great court may be found in Kansas, Pacific Ry. Co. v. Salmon, 11 Kan. 83. In this State the common-law rule as to fellow-servants with regard to those engaged in operating a railroad has

been abrogated by statute, sections 2873, Revised Statutes 1899, section 2873, Ann. St.. 1906, and it has been decided that one repairing bridges for a railroad company, if injured while in the line of duty, though not actually engaged in work on a bridge, is within the beneficial influence of the statute. [Callahan v. St. Louis Merchants' Bridge, etc., Co., 170 Mo. 473, 71 S. W. 208.]

It therefore appears that the mere fact of the relation of master and servant furnishes no valid reason for denying the application of the doctrine of presumptive negligence in this case. Both the Kansas City Court of Appeals and this court have heretofore given judgment to the effect that the relation of master and servant alone does not exclude the doctrine as to railroad employees in a proper case. See Shuler v. O. K. C. & E. Ry. Co., 87 Mo. App. 618; St. Clair v. St. Louis, etc., R. Co., 122 Mo. App. 519, 99 S. W. 775. Furthermore, our Supreme Court applied the doctrine as between master and servant in a case not within the influence of our fellow-servant statute, when the fact of the sudden starting of the machine which occasioned the injury indicated want of care in construction and precluded the idea of non-liability on the score of fellow service. See Blanton v. Dold, 109 Mo. 64, 74, 75, 18 S. W. 1149. Another case where the doctrine was applied between master and servant is Haas v. St. Louis & S. R. Co., 111 Mo. App. 706, 90 S. W. 1155.

We do not hesitate to express the opinion, as was done on the former appeal, that the doctrine referred to might have been invoked by plaintiff had. he relied solely upon a general charge of negligence against defendant, for it seems that the uncoupling of a freight train in the circumstances stated, while running over the tracks at the rate of twenty or twenty-five miles an hour is such an unusual and extraordinary occurrence as to bespeak the want of due care on the part of the defendant in some respect or somewhere. It may be the

negligence was in the operation of the locomotives or it may be in the construction or defective condition of the couplings or it may lie in the defective condition of the roadbed, but though the fact in and of itself indicates negligence no one can say that it points to the engineer as the negligent party. As suggested, the fact may point negligence but what particular negligence it indicates is another question. The plaintiff in his petition points to the negligent acts of the engineers as those upon which he relies for a recovery and fails to give any proof to sustain the charge. It is clear enough that although the fact of the accident bespeaks negligence, no one can say that of itself it indicates or tends to prove negligence in the engineer any more than it tends to prove negligence in the condition or construction of the couplings.

The general rule obtains to the effect that the specific acts of negligence pleaded and relied upon for recovery must be proved. [Waldhier v. H. & S. Jo. R. R. Co., 71 Mo. 514; Price v. St. Louis, etc., Ry. Co., 72 Mo. 414; Bunyan v. Citizens' Ry. Co., 127 Mo. 12, 29 S. W. 842; Ely v. St. Louis, etc., Ry. Co., 77 Mo. 34; McGrath v. St. Louis Transit Co., 197 Mo. 97, 94 S. W. 872; Orcutt v. Century Building Co., 201 Mo. 424, 99 S. W. 1062; Beave v. St. Louis Transit Co., 212 Mo. 331, 111 S. W. 52.] In proper cases when the allegation of negligence is general in character only and unaccompanied by a recital of the specific acts which go to the breach of duty relied upon, the doctrine of *res ipsa loquitur* may be invoked. The rule permitting a presumption of negligence to suffice for plaintiff proceeds on the theory that it is easily within the means of defendant to show there was no dereliction on his part, if such be the fact, while the plaintiff would labor under a great disadvantage if the burden to show the particular acts of negligence continued with him. [Roscoe v. Met. Street Ry. Co., 202 Mo. 576, 101 S. W. 32; Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062;

Feary v. Met. Street Ry. Co., 162 Mo. 75, 62 S. W. 452; Malloy v. St. L. & S. R. Co., 173 Mo. 75, 73 S. W. 159; Gibler v. Q. O. & K. C. Ry. Co., 129 Mo. App. 93, 107 S. W. 1021; Briscoe v. Met. Street Ry. Co., 222 Mo. 104, 120 S. W. 1162.]

There can be no doubt that one may join in his petition an allegation of general negligence with averments of specific acts touching the same matter of complaint. But when the petition contains a general allegation of negligence and proceeds to aver specific matters of fact as to the manner in which the mishap occurred, the specific averments are preferred and take precedence over the general allegation as to the same subject-matter, and plaintiff is therefore required to prove the specific allegations of fact as laid. The authorities all go to this effect. See Mueller v. La Prelle Shoe Co., 109 Mo. App. 506, 84 S. W. 1010; McManamee v. Missouri Pac. Ry. Co., 135 Mo. 440, 37 S. W. 119; Waldhier v. H. & St. J. R. Co., 71 Mo. 514. From these premises, it is determined and the rule of practice obtains to the effect that where there is a general allegation in the petition as to the negligent breach of duty and it is accompanied by averments of specific acts of negligence touching the same subject-matter, the rule of *res ipsa loquitur* will not apply, for by going into the specification of negligent acts plaintiff has shown his familiarity with the grounds of liability involved and indicated not only his purpose but his ability as well to prove the same as laid. See Evans v. Wabash R. R. Co., 222 Mo. 435, 121 S. W. 36.

Indeed, the general doctrine above referred to is portrayed in all of the cases where the verdict is sought to be sustained on the theory *res ipsa loquitur*. In other words, in every case whether the petition contains a general allegation of negligence or not, if the averments point to the specific negligence relied upon for a recovery, the plaintiff is required to prove the same as laid and the doctrine of presumptive negligence may

not be invoked. By averring specific negligence, plaintiff indicates his purpose to prove the same and defendant is required only to defend against the acts of the particular negligent party pointed out in the pleading—in this case, the engineers and those in charge of the train. See the following cases in point: Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062; Roscoe v. Met. Street Ry. Co., 202 Mo. 576, 101 S. W. 32; McGrath v. St. Louis Transit Co., 197 Mo. 97, 94 S. W. 872; Potter v. Met. Street Ry. Co., —— Mo. App. ——, 126 S. W. 209; Evans v. Wabash R. R. Co., 222 Mo. 435, 121 S. W. 36; Beave v. St. Louis Transit Co., 212 Mo. 331, 111 S. W. 52.

It therefore appears, in view of the allegations of his petition, that plaintiff may not invoke the doctrine of *res ipsa loquitur*, even though his petition contains a general allegation of negligence, for the reason he saw fit to accompany such general allegation with specific allegations of negligent acts touching the same subject-matter. Having chosen to thus specify the engineers and others in charge of the train as the negligent persons, he must prove the fact as laid in order to make a prima facie case, otherwise there appears a total failure to carry the burden which the law casts upon him. Having failed to prove any negligent acts whatever against the engineers or others in charge of the train, the judgment is unsupported by the evidence and should be reversed. It is so ordered. All concur.