JAMES E. FERGUSON, RESPONDENT, v. FULTON IRON WORKS, AP-
PELLANT.*

St. Louis Court of Appeals. Opinion filed January 8, 1924.

**1.—Master and Servant—Negligence—Servant Injured—Operating Auto-
matic Air Hammer—Res Ipsa Loquitur—Evidence—Jury Question.** In an
action by a servant for damages alleged to have been sustained while he was
engaged in chipping rough metal projections from metal castings with an
automatic air hammer containing a chisel, caused by a piece of metal being
knocked from the casting and thrown into his eye, causing the sight to be
permanently lost, evidence that, while plaintiff was operating the hammer.
it suddenly caught and began jumping and vibrating so that he could not
control it, which caused the metal castings chipped off to fly toward him in-
stead of away from him, and that when the hammer was in proper opera-
tion, such particles of metal castings would fly away from him, **held,** under
the facts as disclosed by the evidence, to make a case for the jury under
the **res ipsa loquitur** doctrine and that the demurrer to plaintiff's evidence
was properly overruled.

**2.—Res Ipsa Loquitur—Defined.** The rules of res ipsa loquitur means that,
when the thing which has caused an injury is shown to be under the manage-
ment and control of the party charged with negligence, and the accident is
such as in the ordinary course of things will not happen if those who have
such management use proper care, the accident itself affords reasonable
evidence, in the absence of an explanation by the parties charged, that it
arose from want of proper care.

**3.—Instructions—Master and Servant—Servant Injured—Operating Auto-
matic Air Hammer—Instruction Not Erroneous as Assuming Facts in Dis-**

---

Reporter's Note: **Certiorari** issued in the above cause by the Supreme
Court, on hearing, was quashed, December 30, 1926. See 289 S. W. Rep. 583.

**pute.** In an action for damages alleged to have been sustained by plaintiff while engaged in chipping rough metal projections from metal castings with an automatic air hammer containing a chisel, caused by a piece of metal being knocked from the casting and thrown into his eye causing the sight to be permanently lost, an instruction authorizing a recovery if the jury found that while plaintiff was exercising ordinary care for his own safety, and while chipping pièces of metal off of said castings with said hammer 'machine, and attempting to use the same in a normal and proper manner, it unexpectedly and in an extremely unusual manner jumped, caught and severely vibrated so that plaintiff could not control the same, and the chisel he was using by reason thereof caught and broke and knocked off pieces of metal from said castings with great force, and pieces of metal from said castings were thereby, and by reason thereof, thrown into plain-tiff's eye, **held** not erroneous as assuming the facts in dispute by not re-quiring the jury to find that an abnormal movement of the machine caused the plaintiff to lose control and that the loss of control caused the chips to fly against him.

*Corpus Juris-Cyc. References: Master and Servant, 39CJ, p. 1116, n. 61; Trial, 38Cyc, p. 1663, n. 24.

Appeal from the Circuit Court of St. Louis County.—Hon. John W. McElhinney, Judge.

AFFIRMED.

*Holland, Rutledge & Lashley, R. L. Ailworth* for appellant.

(1) The court erred in refusing to give defendant's instructions in the nature of demurrers to the evidence, both at the close of plain-tiff's evidence and of the entire evidence. The instructions should have been given for the following reasons: 1. While the evidence of plaintiff tends to show that the air hammer bucked, jumped and vibrated while he was chipping on cast iron and that he received chips of metal in his eye, it did not show any reason therefor con-stituting negligence on the part of defendant, and the doctrine of *res ipsa loquitur* has no application to this character of case. Klebe v. Distilling Co., 207 Mo. 480; Removich v. Construction Co., 264 Mo. 43; Hamilton v. Railroad, 123 Mo. App. 619; Johnson v. Rail-way, 104 Mo. App. 592; Kelly v. Railroad, 105 Mo. App. 376; Blan-ton v. Dold, 109 Mo. 74; See Authorities under II-3. 2. The evi-dence failed to show that the bucking, jumping or vibrating of the air hammer caused chips of metal to fly into plaintiff's eye. The ev-idence was to the contrary. Nor did it show that a loss of control of the hammer caused the injury. The testimony of plaintiff to the effect that chips would fly away from him when chipping is so con-trary to the physical facts and common knowledge and experience as to be of no probative value. Kibble v. Railroad, 285 Mo. 618; Ogles-by v. Railway, 177 Mo. 296; Payne v. Railroad Co., 136 Mo. 580; Sexton v. Railway Co., 245 Mo. 271, et seq.; Demeat v. Packing and

Moving Co., 121 Mo. App. 103, et seq.; Zaloutouchin v. Railway Co., 127 Mo. App. 584; Champagne v. Hamey, 189 Mo. 726; Spohn v. Railway Co., 87 Mo. 74. 3. If plaintiff were entitled to the aid of presumptions, these vanish from the case upon the appearance of evidence to the contrary. Griffith v. Continental Casualty Co., 253 S. W. 1048. (2) The court erred in refusing to give defendant's instruction E, as the defendant was clearly entitled to a finding of the jury on the facts presented therein and its verdict if they found them to be true. (See cases under point 1, subdivision 1.) (3) The court erred in refusing to give defendant's instruction F, said instruction properly stating the law under the evidence in the case. Harbaceck v. Fulton Iron Works, 229 S. W. 803; Emery v. Railway Co., 246 S. W. 335; Wilford v. Murch Bros. Construction Co., 232 S. W. 243. (4) The court erred in giving plaintiff's instruction No. 1, because: 1. It assumed facts in dispute. Reel v. Consolidated Inv. Co., 236 S. W. 43; La Fever v. Pryor, 190 S. W. 644; Wease v. Fayette, 259 Mo. 654; Lukaminai v. American Steel Co., 162 Mo. App. 631; Garcy v. K. C., 168 S. W. 619; Linn v. Bridge Co., 78 Mo. App. 111; Moon v. Transit Co., 247 Mo. 227; Clark v. Railroad 242 Mo. 570. 2. It failed to require the jury to find certain facts necessary for plaintiff to predicate a recovery on. 3. It instructed the jury in effect that they must instead of might find for plaintiff. (5) On the entire record the verdict was clearly against the weight of the evidence. (See cases cited under point 1, subdivision 3.) Byers v. Essex Box Co., 219 S. W. 571; Koprivica v. Standard, 218 S. W. 690; McKeever v. Kramer, 218 S. W. 405; Stack v. Gen. Baking Co., 223 S. W. 97.

*Claude M. Crooks* and *Charles E. Morrow* for respondent.

(1) The court did not err in refusing defendant's instructions in the nature of demurrers to the evidence. The doctrine of *res ipsa loquitur* applies. Ash v. Woodward & Tiernan Printing Co., 199 S. W. 994; Blanton v. Dodd, 109 Mo. 64; Magne v. Railway Co., 287 Mo. 248. (2) Even if the doctrine of *res ipsa loquitur* be inapplicable, which we deny, yet under the facts in evidence, the defendant directed the plaintiff to use the hammer in question, and it was its duty to know its condition. If its defects were or could have been known by the exercise of ordinary care it is chargeable with the consequences following its failure to possess or obtain such knowledge and it was negligent. Eckhardt v. Wagner Electric Mfg. Co., 235 S. W. 117. (3) The court did not err in giving plaintiff's instruction No. 1. (a) It does not assume facts in dispute. It requires the jury to find that plaintiff was using the hammer in a normal and proper manner. Evans v. General Explosives Co., 239 S. W. 487, 493;

Liljegren v. United Railways Co., 227 S. W. 925; Stumpf v. United Railways Co., 227 S. W. 852; Costello v. Kansas City, 280 Mo. 591-593; Kinlen v. Railroad, 216 Mo. 160-162; O'Connell v. Railway Co., 106 Mo. 482. (b) It does not fail to require the jury to find facts necessary to a recovery by plaintiff in the respects contended by appellant. (c) It did not erroneously instruct the jury that they must find for plaintiff, but correctly told the jury that if they found the facts required to be found by it, "then and in that case you are instructed that the plaintiff is entitled to recover against the defendant, and your verdict will be in favor of plaintiff and against defendant." (4) The court did not err in refusing defendant's instruction E. It is not true that even if in good condition and properly operating the hammer might cast chips in any direction, that the plaintiff was not entitled to recover under the facts of this case. (5) The court did not err in refusing defendant's instruction F. It is not true that even if in the ordinary, usual and customary manner of doing the work, particles of metal would fly in all directions, that the plaintiff assumed all the risk of injury under the facts in this case and cannot recover if the hammer was out of order, and its extraordinary action caused the pieces of metal to injure his eye.

NIPPER, C.—This is an action for damages alleged to have been sustained by plaintiff on the twenty-third day of May, 1921, while in the employ of defendant, at its foundry and steel plant in St. Louis County, Missouri. It is alleged that plaintiff was engaged in chipping rough metal projections from metal castings with an automatic air hammer containing a chisel; that it was plaintiff's duty, and he was ordered and directed by defendant, to operate said hammer; that in its usual operation it would not jump, catch, and vibrate; that if such hammer did jump, catch, and vibrate, the operator could not control it, and it would be extremely dangerous and likely to cut, break off, and remove pieces of metal from castings; that while he was engaged in the operation of the hammer, and using due care and caution, the said hammer in an exceptionally and extremely unusual manner jumped, caught, and severely vibrated so that plaintiff could not control it, and pieces of metal were knocked from a piece of casting and thrown into and against plaintiff's eye, causing the sight to be permanently lost.

The petition counted upon general negligence, plaintiff seeking to invoke the doctrine of res ipsa loquitur.

The answer, in addition to a general denial, pleads contributory negligence on the part of plaintiff, as well as his failure to have the injured eye properly cared for.

Plaintiff obtained judgment against defendant for $5000. From this judgment defendant appeals.

The facts of this case, in so far as they may be necessary to determine the questions presented here by appeal, are about as follows:

On the date mentioned in the petition, plaintiff, who was about thirty-four years old, was in the employ of defendant at its foundry, engaged in chipping rough projections from certain castings by means of an automatic air hammer and a chisel operated by compressed air communicated to the hammer by means of a hose attached to pipes leading from tanks of compressed air, which air was compressed by means of an engine. The hammer was twelve to fourteen inches in length, and there was a piston or plunger which worked back and forth in the cylinder or barrel and against the chisel placed in the end of the barrel. When in operation, plaintiff would hold his right hand on the handle, and his left hand around the chisel. There was a trigger which was pulled with the finger to operate and control the air. The chisel was then held against rough projections on metal castings, and when struck by the plunger would break off the castings and make the metal smooth. When the hammer was in order and pressure was placed upon the trigger, the valve opened . and air was forced into the hammer and caused the piston to operate, and when the pressure was taken off the trigger it would shut off the power. Plaintiff was operating this hammer, but was not particularly familiar with its mechanism. Plaintiff had nothing to do with the inspection or repair of the hammer, nor had he any control over the source of power which operated the same. In the ordinary and usual operation of the hammer it did not jump or vibrate, but when it was placed against projections, the force of the stroke would be from the operator and would cause the particles of metal broken and chipped off to fly away from him. This was plaintiff's evidence in respect to this matter. Although he stated that occasionally a few pieces might fly towards him, yet nearly all these small particles of metal castings, which were removed by means of the hammer when in proper operation, would fly away from him. The evidence of a number of witnesses for defendant was to the effect that such particles would fly in all directions. From plaintiff's evidence it further appears that, while he had operated these hammers for quite a period before his injury, he had never before been struck by particles of metal chipped off by such hammer, although they might fly toward him. On this occasion he wore goggles, although they were not properly arranged so as to protect his eyes. At the time plaintiff went to work on the night of his injury, a hammer was furnished and provided him by defendant's foreman, Schroeder, and he was directed by said foreman to use this particular hammer, and he started chipping from a steel valve chest. When he had almost reached the top or peak of the same, the hammer suddenly began jumping and vibrating so that he could not control it, and the chisel knocked the pieces of

220 Mo. App.—34.

casting into his eye.  The plaintiff then describes what took place in the following language:

"I was chipping forward until I had reached almost the top or peak of this cut I was taking off; this cut ran a length of about, something like six or eight inches, and I judge about an inch or three-quarters, something like that, thick; the cut was crosswise; broad, and the thickness was something like an inch, maybe a little better than an inch.

"In chipping this, when I reached this highest peak, all at once this machine gets to bucking, and when it commenced bucking, jumping and vibrating, it threw the slack of this casting and one piece hit the lens, a pretty good chunk, and three pieces entered into this left eye.  A piece hit my cheek and one small piece hit the right eye. That blinded me, and the machine. began to buck and vibrate so that I could not hold it.

"Eventually it kicked the chisel from my hand, down about the side of the casting I was chipping.

"Then I taken the hammer—it continued to blow and hiss, the trigger was hung—it did not seem to want to release, and I gave it a couple of jerks down against the platform, and she cut herself off, see?"

Plaintiff testified that he did not do anything to cause the hammer to jump and vibrate as it had, nor did he see any one else do anything to bring about such a result.  A few moments after plaintiff was injured he picked up the hammer and was told by his foreman, Mr. Schroeder, to throw it on the bench and let the repair man fix it.  Plaintiff was using the hammer in the usual and customary way that he had always used it, and had never known it to act in such an unusual manner before.

Most of the evidence offered by the defendant was to the effect that in chipping cast iron in the manner in which plaintiff was chipping it the flight of the flying particles of chips could not be controlled. There was also evidence offered by the defendant that defects in the hammer or operation of the compressors would only have the effect of cutting off the power so that the hammer would not operate, and that none of these things would cause the hammer to jump or vibrate. Also, that all tools were tested prior to their leaving the tool room, and that all air compressors were in proper operation at the time of the accident.

Defendant's foreman, Schroeder, who directed plaintiff to use the hammer in question before he was injured, and also directed him to throw it on the bench and let the repair man have it after he was injured, was not called as a witness in the case.  This particular hammer had been in use at defendant's foundry for about five years, as shown by the testimony of defendant's repair man, who also tes-

tified that he had no recollection of having seen the hammer in ques-
tion for a month or two before or after the accident. Defendant's
evidence tended to show that if dirt or dust would get in the hammer,
or a rock as sometimes happens, the trigger would close and would
not work, but the plunger would continue its strokes. When the
hammer is going at full speed, or the valve wide open, the plunger
hits about six hundred times a minute. This speed can be controlled
down to eighty or one hundred strokes a minute when the trigger
and valves are in proper working order.

One witness, testifying for defendant as an expert, said that, where
a hose of this kind was attached to a hammer, and the power or air
was increased, he did not think it would cause it to jump, but if it
was an ordinary hose, an increase in the power would have a tendency
to make the whole thing squirm.

Defendant's principal contention in this court is that the doctrine
of *res ipsa loquitur* has no application to the facts of this case, be-
cause the evidence did not disclose any reason for the jumping and
vibrating of the hammer, constituting negligence on the part of the
defendant, nor did the evidence disclose that such action of the
air hammer caused the chips of metal to fly into plaintiff's eye. Ob-
jections are also made to the action of the trial court in giving cer-
tain instructions for plaintiff, and in refusing to give certain in-
structions requested by defendant. We will refer to the question of
instructions later.

It will be observed from what has already been said with respect
to this case that plaintiff seeks to invoke the rule of *res ipsa loquitur*,
which means that when the thing which has caused an injury is
shown to be under the management and control of the party charged
with negligence, and the accident is such as in the ordinary course
of things will not happen, if those who have such management use
proper care, the accident itself affords reasonable evidence, in the
absence of an explanation by the parties charged, that it arose from
want of proper care. [Warren v. Missouri & Kansas Tel. Co., 196
Mo. App. 549, 1. c. 555, 196 S. W. 1030; Blanton v. Dold, 109 Mo.
64, 18 S. W. 1149; Mayne v. Kansas City Rys. Co., 287 Mo. 235,
229 S. W. 386; Feldman v. Chicago Rys. Co. et al., 289 Ill. 25; Cody v.
Lusk, 187 Mo. App. 327, 171 S. W. 624; Gibler v. Railroad, 148 Mo.
App. 475, 1. c. 484, 128 S. W. 791.] The rule is more often invoked
and applied in cases of carrier and passenger, and in many states it
is held that such rule has no place in the law of master and servant.
This is because the servant as a rule has as much or more knowledge
of the place where and the instrumentalities with which he works
than the master. The instrumentalities with which he works, in many
instances, are under his care and control. In Missouri it is now es-

tablished that, as between master and servant, the rule applies in many instances.

The rule of *res ipsa loquitur* may be invoked in many master and servant cases as it is applied in this State when the means and instrumentalities used by the servant are peculiarly within the knowledge and under the .control of the master, and under such circumstances the master is in a much better position to explain the cause of the accident than the injured party.   [Klebe v. Distilling Co., 207 Mo. 480, 105 S. W. 1057.]

The facts of the present case present a very close question as to whether or not the rule can be invoked.   However, it seems under the authority of Blanton, v. Dold, supra, and other opinions rendered by our Supreme and Appellate Courts since that case, that the plaintiff was entitled to have his case submitted to the jury for determination.   In Blanton v. Dold, supra, plaintiff was working at a machine called a "blood mill" moved by steam power.   The movement of the machine was controlled by a lever which would shift the belt from a fixed to a loose wheel.   Plaintiff was injured while working about this machine because of the machine being suddenly and unexpectedly started.   The sudden starting of the machine was not ascribable to any act of the plaintiff, nor was plaintiff able to assign any cause for the sudden movement of the same.   Several probable explanations of the machine's action were advanced, but they all fell short of accounting definitely for its action.   The court held that the mere fact of an injury does not necessarily create a liability or warrant an inference of negligence, and the burden of proof was on the plaintiff to establish directly or by a just inference some want of care to which his injury might reasonably be traced.   Yet, it was held that some accidents or happenings of this kind are of such a nature as to carry in a mere statement of their occurrence an implication of some neglect.   The court then cites the case of Mooney v. Lumber Co., 154 Mass. 407, which case held that the starting without apparent cause of the carriage of a sawing machine, whereby one was injured, constituted evidence to support the finding that there was negligence in the construction or condition of the machine with reference to its being reasonably safe.   Our Supreme Court has cited and followed the rulings of the Supreme Court of Massachusetts many times since in its application of the rule of *res ipsa loquitur* in this State, as will be noted by reference to the cases cited in Ash v. Woodward & Tierman Printing Co. (Mo.), 199 S. W. 994; Price v. Railroad, 220 Mo. 435, 119 S. W. 932; Byers v. Essex Inv. Co., (Mo.), 219 S. W. 570; and many others.   In Ash v. Woodward & Tiernan Printing Co., supra, the Supreme Court of this State followed Blanton v. Dold, supra, saying that the evidence was sufficient

to warrant the jury in returning a verdict in behalf of plaintiff where he was injured by the sudden starting of a paper cutting machine.

In Cormo v. Boston Bridge Works, 205 Mass. 366, it was held that, where plaintiff was using a pneumatic hammer in hammering iron rivets, and that when such hammer was in proper condition it would remain at rest until the trigger was pressed, and that such hammer required frequent cleaning in order to keep dust from getting under the valve, and interfering with the proper motion and control of the piston, and also, that such hammer had not been cleaned or inspected for a considerable period before the accident, the plaintiff was entitled to go to the jury. The court stated:

"A hammer properly constructed and in repair, . . . would move only as the trigger was pressed, and unless some satisfactory explanation was offered by the defendant, the jury upon this evidence could find that it had become defective."

It is rather significant in this case when plaintiff testified that immediately after his injury he was told by the foreman to throw the hammer to one side in order that it might be repaired, thus affording additional evidence that it was out of repair and not reasonably safe, that such foreman was not called to testify in this case, although he of all of defendant's employees would or ought to be in a position to know of its condition. Defendant's evidence also discloses that this hammer could get out of order by wear, or by dirt or some other substance getting into it, and that when the hammer was in proper condition it could be controlled without any difficulty. While it is a question about which witnesses in this case differ as to whether or not the flying particles of metal could be controlled when the hammer was properly working, we are not prepared to say that plaintiff's testimony that flying particles could be controlled in the main is so contrary to physical facts as to be unworthy of belief. Under the facts as disclosed by this record, the demurrer to plaintiff's evidence was properly overruled.

Defendant complains of the action of the trial court in refusing to give instructions E and F requested by the defendant.

Instruction E was to the effect that if the jury found that when the air hammer was operating properly it would cast chips therefrom in any direction, notwithstanding the care or skill of the operator, then their verdict must be for defendant. There was no error in refusing to give this instruction under the facts of this case, as will be noted from what we have already said.

Instruction F was to the effect that if the jury found that the injury occurred, and that in the ordinary and usual manner of doing the work the particles of metal would fly in all directions, plaintiff assumed the risk of the injury, and was not entitled to recover. What we have heretofore stated disposes of the contention of

counsel for defendant that it was reversible error to refuse this instruction. This is especially true as defendant secured an instruction that if the failure to wear goggles was the sole cause of the injury the plaintiff could not recover.

It is also contended that there was error in plaintiff's instruction No. 1, because it assumed facts in dispute. This instruction is rather lengthy, and it would unnecessarily burden this opinion to set it out *in haec verba*. But the portion of the instruction to which objection is made is as follows:

"And if the jury further find and believe from the evidence that on said day and at the time plaintiff claims to have been injured and while he was engaged in the operation of said hammer machine, he was exercising ordinary care for his own safety and while chipping pieces of metal off of said castings with said hammer machine and attempting to use the same in a normal and proper manner, the said hammer machine unexpectedly and in an extremely unusual manner jumped, caught, and severely vibrated so that the plaintiff could not control the same, and the chisel he was using by reason thereof caught and broke and knocked off pieces of metal from said castings with great force, and pieces of metal from said castings were thereby and by reason thereof, thrown into and against the plaintiff's left eye, thereby injuring the plaintiff, as mentioned in the evidence, without the plaintiff, or any other person doing anything to cause said hammer to so unexpectedly and in an extremely unusual manner, jump, catch, and severely vibrate, as aforesaid."

It is urged that this portion of the instruction does not require the jury to find that an abnormal movement of the machine caused the plaintiff to lose control, and that a loss of control caused the chips to fly against plaintiff. The clauses of this portion of the instruction are joined by the conjunction and, and the preceding portion of the instruction begins with the words: "And if you further believe and find," etc. It is perfectly apparent from reading the same that defendant's objections are highly technical and without merit.

Finding no reversible error in the record, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.