HOUSTON BELT & TERMINAL RY. CO. v. WILSON.

(Court of Civil Appeals of Texas. Galveston. March 17, 1914.)

1. EMINENT DOMAIN (§ 303*)—CONSTRUCTION OF RAILROAD—MEASURE OF DAMAGES.

The measure of damages for permanent injury to land by the construction of a railroad near it is the difference between its market value immediately before construction and operation of the railroad and immediately thereafter.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 815–817; Dec. Dig. § 303.*]

2. EMINENT DOMAIN (§ 303*)—CONSTRUCTION OF RAILROAD — INJURY TO REALTY—EVIDENCE.

In determining the amount of damages from injury to realty by constructing a railroad adjacent thereto, all elements causing depreciation in the value of the land may be considered, including probable or contemplated increase of operations, though the measure of damages is the difference between the value of the land before and after the construction and operation of the railroad.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 815–817; Dec. Dig. § 303.*]

3. EMINENT DOMAIN (§ 303*)—CONSTRUCTION OF RAILROAD—INJURY TO LAND—DAMAGES.

In forming their opinion as to the difference between the value of land before and after the construction of a railroad adjacent thereto for the purpose of testifying as to the damage sustained, witnesses may take into consideration the past and present effect of the construction and operation, as well as probable future constructions and operations.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 815–817; Dec. Dig. § 303.*]

4. EMINENT DOMAIN · (§ 303*)—CONSTRUCTION OF RAILROAD—INJURY TO LAND—DAMAGES.

In an action for damage to land by the construction of a railroad terminal system near it, the jury could not allow, in addition to the depreciation in value immediately after the railroad was constructed, damages which might result from further operations which plaintiff might, in reasonable probability, sustain in the future, if such probable operations were not a part of the causes which produced the diminution just after the commission of the original acts.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 815–817; Dec. Dig. § 303.*]

5. EMINENT DOMAIN (§ 307*)—CONSTRUCTION OF RAILROAD—INJURIES FROM OPERATION—ACTIONS—INSTRUCTIONS.

In an action for damage to realty by the construction of a terminal railroad adjacent thereto, the court instructed that plaintiff sued for permanent damages to her property, that is, damages which have flowed, or which will in the future flow, from the use of the constructions complained of, and the jury should not consider any previous constructions except those which were permanent, but should consider, not only the use of the tracks immediately after the construction and operation thereof, but all the uses to which they have been subsequently put, and which, in reasonable contemplation,

will be made of the tracks and constructions in the future, since plaintiff is only entitled to one recovery for all damages which have accrued and will, in reasonable probability, accrue in the future. It further instructed that whether defendant would put in switches to the property at any future time was entirely within its option, and that question should be considered only upon passing upon the question of present damages or future reduction or increase in the value of the property. *Held*, that the instruction was erroneous and misleading, as permitting the jury to allow plaintiff, in addition to the amount allowed for depreciation in value, a further amount for damages which she might suffer in the future.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 820–824; Dec. Dig. § 307.*]

6. EMINENT DOMAIN (§ 307*)—CONSTRUCTION OF RAILROAD—INJURY TO REALTY—INSTRUCTIONS.

In an action for damage to realty by constructing railroad terminal yards adjacent thereto, a requested charge that, if the market value of the land for any use to which it might be put, or to which it was adapted, immediately after the construction of the tracks and beginning of operations was equal to its market value for any use to which it might be put or was adapted immediately before such construction, plaintiff could not recover should have been given, being supported by evidence.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 820–824; Dec. Dig. § 307.*]

7. EMINENT DOMAIN (§ 293*)—CONSTRUCTION OF RAILROAD—EVIDENCE—GENERAL ISSUE.

In an action for damage to land by the construction of railroad terminal yards adjacent thereto, defendant could show under the general denial that the market value of the property for any use to which it might be put immediately after construction of the tracks was equal to or greater than its market value before such construction.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 797–802; Dec. Dig. § 293.*]

8. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action for damage to realty by the construction of railroad terminal yards adjacent thereto, a charge was requested that, if the market value of the property for any use to which it might be put, or to which it was adapted, immediately after the construction of the tracks and the beginning of operations was greater than or equal to the market value for any use to which it might be put before the construction of the tracks and beginning of operations, the jury should find for defendant. *Held*, that the requested charge was not upon the weight of the evidence, in that it singled out one phase of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

9. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS—INSTRUCTIONS ALREADY GIVEN.

The requested charge was not defective for not stating that, in arriving at the market value, the jury should consider, not only those uses of the property presently occurring, but those which might, in reasonable probability, in the future occur; that having been sufficiently instructed in the main charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

10. EMINENT DOMAIN (§ 293*)—CONSTRUCTION OF RAILROAD—INJURIES FROM OPERATION—ACTIONS—ADMISSION OF EVIDENCE.

In an action for damage to realty by the construction and operation of railroad terminal

yards adjacent thereto, in which plaintiff alleged that the acts alleged had materially impaired the comfortable use and enjoyment of the premises, and done unreasonable harm to occupants of ordinary sensibilities, and that the passing trains interfered with conversation, etc., and threw out smoke and dust, evidence was admissible whether persons living on the premises experienced or complained of annoyance from the operation of the trains.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 797–802; Dec. Dig. § 293.*]

11. EVIDENCE (§ 155*)—PART OF CONVERSATION.

In an action for injury to realty by the construction and operation of railroad yards adjacent thereto, in which a witness for plaintiff was asked why the house was vacant, and replied that he was told that they wanted too much rent for it, defendant's counsel could ask whether the witness was told why they wanted too much rent for it, to which witness would have answered that his informant stated that plaintiff wanted too much rent in view of the bad repair of the house; the remainder of the conversation being admissible after plaintiff had put in a part of it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458; Dec. Dig. § 155.*]

12. APPEAL AND ERROR (§ 1058*)—HARMLESS ERROR—EVIDENCE.

Any error in sustaining objections to evidence was harmless, where the substance of the evidence was afterwards admitted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4204, 4206; Dec. Dig. § 1058.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Mollie F. Wilson against the Houston Belt & Terminal Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Andrews, Ball & Streetman, of Houston, for appellant. Hutcheson & Hutcheson, of Houston, for appellee.

McMEANS, J. Mrs. Mollie F. Wilson, being the owner of lots 6, 7, 12, and one-half of 8, in block 207, in the city of Houston, fronting 150 feet on Prairie street and 125 feet on Hutchins street, brought this suit against the Houston Belt & Terminal Railway Company and several other railroad companies to recover damages in the sum of $15,000, by reason of the construction in front of and adjacent to her property, as a part of a great terminal system, certain railroad tracks and the operation of trains thereon as a part of the same system, which constructions and operations were alleged to be permanent in their nature and designed to serve, not only the needs of the Houston Belt & Terminal Railway Company, but that of all of the other defendants named, and other railroads which should from time to time come into the city of Houston, and that the operations over said tracks would in future increase as the business of said roads grew. During the trial plaintiff dismissed as to all the defendants except the Houston Belt & Terminal Railway Company. This defendant pleaded the general denial, and specially pleaded that the tracks in question had been constructed under permission from the city of Houston granted by certain ordinances. A trial before a jury resulted in a verdict and judgment for plaintiff for $3,980, from which the defendant has appealed.

The evidence shows that prior to the constructions here complained of there had been constructed several railroad tracks in the vicinity of plaintiff's property, over which operations were conducted, but that a portion of the tracks and the operations thereover were of a temporary character only. The constructions and operations here complained of were permanent in nature, and after the tracks were laid, and operations were begun thereon, the temporary tracks were to be removed, and operations thereover discontinued. The evidence as to whether the market value of plaintiff's property was depreciated or enhanced by reason of the permanent constructions was conflicting. There was much testimony admitted bearing upon the increased future use of and additions to the permanent constructions.

The court charged the jury in part as follows:

"(8½) In this suit plaintiff sues to recover permanent damages to her property, that is, damages which have flowed to her, or which will in the future flow to her, from use of the constructions complained of by her, in a permanent way; and, in arriving at your verdict in this case, you will not take into consideration any previous constructions, if any, except such as you find from the evidence to have been permanent.

"(9) You are instructed in this case that the phrase 'market value,' as used in charges given you, is meant, with respect to real property, the price which such property would bring when offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who desires to buy it, but is under no necessity of having it; and, in determining what the market value of the property in controversy was immediately before the construction of the tracks complained of, and the beginning of operations thereover, and what the market value of said property (taking into consideration, not only the uses then immediately made, but also such as would, in reasonable contemplation, likely be made thereof in future) was immediately after the construction of said tracks, and the beginning of operations thereover, you will take into consideration all of the capabilities of the property, and all of the uses to which it might be applied, or for which it was adapted at the several times at which you seek to ascertain such value.

"(9½) In connection with the charges submitted to you in this case, in arriving at your verdict, you will take into consideration, not only the use of the tracks made immediately after the construction and operation there-

on commenced, but all the uses to which the said ,tracks have been subsequently put, and which, in reasonable contemplation, will be made of said tracks and constructions by the railroad company in the future, as the plaintiff, in a suit of this kind, is entitled to only one recovery for all damages which have accrued from the immediate effect of the construction and operation, and which will, in reasonable probability, in the future accrue.

"(10) If you believe from a preponderance of the evidence that the laying and construction of the said tracks by or near the property of plaintiff, and the operation of trains thereon, taking into consideration, not only the uses then immediately made, but also such as will, in reasonable contemplation, likely be made thereof in future, had the effect to reduce the value of her property, so that it was worth less immediately after such construction and operation than it was immediately before, to the extent that it was so reduced, you will find your verdict in favor of the plaintiff.

"(11) You are instructed that, if from the evidence you find that the plaintiff has been damaged by the defendant company substantially as alleged, such damage to the plaintiff, if any you find, cannot be offset by any general benefits conferred by the work of the defendant which may have increased the value of the property in the neighborhood generally, and not peculiarly to the plaintiff, if such benefit you find there was; but you can offset such damage, if any, only by such benefits, if any you find there were, as were specially conferred or added to the value of plaintiff's property by the construction and uses complained of in which the general public did not participate.

"(12) Whether the defendant company will or will not or may or may not put in switches to the property at any future time rests entirely within its option, and you will give to that question only such measure of consideration, in passing upon the question of present damages or future reduction in the value or future increase in the value of the property, as you may consider it entitled to in the light of all the evidence upon that subject.

"(13) If, guided by these instructions, you find that the value of plaintiff's property has been reduced by the construction of the tracks and the operation of trains, as alleged, you will find for her, and assess her damages at the amount of such reduction.

" (14) On the other hand, if, excluding the general increase in values in that community, if such you find, the plaintiff's property has not been decreased in value by the construction of said tracks, and the operation of trains thereon, you will find for the defendant."

By several assignments of error appellant vigorously assails paragraphs 8½, 9½, and 12 of the court's charge, which for convenience we will group here:

"(8½) In this suit plaintiff sues to recover permanent damages to her property, that is, damages which have flowed to her, or which will in the future flow to her, from the use of the constructions complained of by her, in a permanent way; and, in arriving at your verdict in this case, you will not take into consideration any previous constructions, if any, except such as you may find from the evidence to have been permanent."

" (9½) In connection with the charges submitted to you in this case, in arriving at your verdict, you will take into consideration, not only the use of the tracks immediately after the construction and operation thereon commenced, but all the uses to which the said tracks have been subsequently put, and which, in reasonable contemplation, will be made of said tracks and constructions by the railroad company in the future, as the plaintiff, in a suit of this kind, is entitled to only one recovery for all damages which have accrued from the immediate effect of the construction and operation, and which will, in reasonable probability, in the future accrue."

"(12) Whether the defendant company will or will not or may or may not put in switches to the property at any future time rests entirely within its option, and you will give to that question only such measure of consideration, in passing upon the question of present damages or future reduction in the value or future increase in the value of the property, as you may consider it entitled to in the light of all the evidence upon that subject."

[1] The measure of damages for a permanent injury to land caused by the construction and operation of a railroad in close proximity to it is the difference between the market value immediately before the constructions were made and operations begun and immediately afterwards. This seems to be the well-recognized rule in this state. Railway v. Downie, 82 Tex. 383, 17 S. W. 620; Express Co. v. Dunn, 81 Tex. 85, 16 S. W. 792; Railway v. Helsey, 62 Tex. 593; Railway v. Seymour, 63 Tex. 347; Railway v. Schofield, 72 Tex. 499, 10 S. W. 575; Railway Co. v. Evans, 47 S. W. 280.

[2-4] It is also the well-established rule that, in a suit for damages growing out of permanent injury to real estate, but one recovery can be had for the wrong inflicted, and that, in arriving at the amount of the depreciation caused by the wrong complained of, while the only measure of damages is the difference between the value before and after, it is proper to take into consideration all the elements entering into the causes of the depreciation, which may be, among other things, the contemplated or probable additional acts of the wrongdoer with reference to the matter or thing which has caused the injury, including the increase of operations, and any other matter that enters into the depreciation of the property immediately fol-

lowing the act which produces the injury. But, while it is true that these elements may be looked to in determining the amount of the decrease in value as the result of the act complained of, the safest rule for the guidance of the jury is the difference in the value just before and just after the doing of the act which produces the depreciation. Thus, in arriving at the damages sustained, the question always is: What is such difference? The witnesses qualified to testify as to values may give their opinions as to the difference in value before and after, and, in forming their opinion, may take into consideration the past and present effect of the construction and operations and probable future constructions and operations, and the effect thereof upon the property damaged, as affecting the depreciation of the property immediately after the commission of the act resulting in injury. The theory is that all such considerations have entered as elements of depreciation at the time the act complained of is done, and that, while the jury may take into consideration injuries which the plaintiff may, in reasonable probability, sustain in the future, this is allowed only as determining the amount of diminution in value just after the commission of the act or acts producing the injury. In no case would it be proper for the jury to allow, in addition to the diminution immediately following the act complained of, damages that might grow out of further acts or operations which the plaintiff might, in reasonable probability, sustain in the future, where said probable acts or operations had not entered into the causes that had produced the diminution just after the commission of the acts complained of.

[5] When the jury in this case allowed plaintiff any amount for the depreciation in value of her property, there was in contemplation of law included in such allowance all injuries inflicted up to the time of the trial, as well as all injuries which might thereafter be inflicted. The court's charge is reasonably susceptible to the construction, and the jury probably construed it to mean, that, in reaching their verdict, they should take into consideration, not only the use of the tracks immediately after the construction and commencement of operations, but all uses to which they had been put to up to the time of the trial, and all uses to which they might be put in future, and that, inasmuch as plaintiff was entitled to only one recovery, they should allow her as damages, not only the amount of the depreciation caused by the construction and operation, but also such further damages as might, in reasonable probability, accrue in future; in other words, they might allow the plaintiff, in addition to the depreciation, a further amount, so as to compensate her for damages which she might suffer in the future. To the extent that the charge is susceptible to this construction, it is wrong and prejudicial to the defendant, for, when an allowance had been made to cover the depreciation in the value of the property, the same covered all elements of future damages and injuries, and any amount that the jury was authorized by the charge to award to plaintiff to cover probable future injuries that did not enter as an element in fixing the amount of the present diminution was improperly authorized by the charge. While the court correctly instructed the jury in the tenth paragraph of the charge that, if the laying of the tracks near the property of appellee, and the operation of the trains thereon, taking into consideration, not only the uses then immediately made, but also such as will, in reasonable contemplation, likely be made thereof in the future, had the effect to reduce the value of the property, so that it was worth less immediately after such construction and operation than it was immediately before, to the extent it was reduced to find a verdict in favor of plaintiff, we think the giving of paragraphs 8½, 9½, and 12 was calculated to confuse and mislead the jury, and to lead them to believe that they could allow damages other than the depreciation in the value of the property, and that this probably accounts for the size of the verdict rendered, which in the amount awarded seems clearly against the preponderance of the evidence.

Appellant's eighth assignment is predicated on the refusal of the court to give the fifth special charge requested by it, which is as follows: "If you believe from the evidence before you that the market value of the property described in plaintiff's petition for any use to which such property might be put, or to which it was adapted, immediately after the construction of the tracks complained of, and the beginning of operations thereover, was greater than or equal to its market value for any use to which it might be put, or for which it was adapted, immediately before the construction of said tracks, and the beginning of operations thereover, then and in such event you will let your verdict be in favor of the defendant Houston Belt & Terminal Railway Company."

[6-9] The evidence raised the issue whether the plaintiff's property immediately after the beginning of the operations complained of was enhanced thereby, and was of greater market value for commercial purposes than theretofore for any purpose to which it might be put. The issue sought to be submitted by the special charge was not submitted by the court in its general charge. The charge should have been given. Boyer v. Railway, 97 Tex. 108, 76 S. W. 441. Appellee contends, in support of the court's action in refusing to give the charge, that the same was properly refused because there was no pleading raising the issue in the form presented so as to require a more definite submission than was submitted in the main charge. We overrule this contention. The defense was one that could have been made under the general

denial. Nor do we agree with appellee that the charge requested was upon the weight of the evidence, in that it singled out one phase of the evidence for submission to the jury. Nor do we agree that the special charge was defective, as contended by appellee, because it failed to advise the jury that, in arriving at the market value of the property, they should consider all the uses, not only those presently occurring, but those which might, in reasonable probability, in the future occur with reference to the property. This phase of the case was sufficiently submitted in the main charge, and it was not necessary to repeat it in the special charge.

If the fifth special charge had been given, as we think it ought, it would not have been necessary to give the third and seventh special charges, the refusal to give which is complained of in the seventh and ninth assignments.

[10] O. A. Clark, an occupant of one of appellee's houses involved in this suit, while testifying, was asked this question by appellant's counsel: "State whether or not you or your family experienced any discomfort or annoyance from the operation of these trains there." Whereupon the following objection made by appellee's attorney was sustained: "The law does not allow the inquiry as to whether an individual experiences discomfiture or annoyance, because, if that were the case, we might bring one man to say it did, and they would say it didn't, and all the time of the court would be consumed in contradictory evidence of that kind; it is a question for the jury to determine whether persons of ordinary sensibility would experience any inconvenience or not." If the witness had been permitted, he would have answered that he and his family did not experience any discomfiture or annoyance from the operation of trains over the tracks complained of. Appellee alleged in her petition that the entire property had been greatly damaged for the purpose of rentals to residence tenants; that the construction and maintenance of the railroad tracks, and the beds thereof, and the operation of locomotives, cars, and trains thereover, had destroyed, or at least materially impaired, her premises in the comfortable use and enjoyment, to an extent working unreasonable hurt to occupants as persons of ordinary taste and sensibilities; that said passing engines, cars, and trains greatly interfere with conversation on the premises, and work discomfort and annoyance to the inmates thereof; that the passing locomotives had been emitting noxious and disagreeable smoke, gases, steam, coal dust, and cinders, which continually filled the premises, and rendered same unfit for any comfortable or healthful use or enjoyment by occupants thereof; and that said premises were subject to violent and disagreeable vibration, so as to render their reasonable comfortable enjoyment by any occupants thereof impossible.

Under the issues raised by the pleadings we think the evidence was admissible, and that the court erred in rejecting it. Daniel v. Railway, 69 S. W. 198. We also think that the testimony of the witness W. S. Tate, who from 1903 to 1912 lived in one of appellee's houses, as to whether any of the members of his family at any time complained to him of any annoyance or discomfort suffered on account of the operation of trains over the tracks in question, was material upon the issues raised by the pleadings, and should have been admitted; and the twelfth assignment raising the point is sustained.

[11] While said witness Tate was upon the stand, and after he had testified that in 1912 he had moved out of one of the houses of appellee involved in this controversy, and that the house thereafter was vacant, he was asked by appellant if he knew why it was vacant. The question was objected to by appellee's counsel, and the objection sustained. Thereafter the witness was called by appellee's counsel and asked by him why the house was vacant, and replied, "Mr. Curb told me that they wanted too much rent for it." Whereupon appellant's counsel asked, "Did he tell you why they wanted too much rent for it?" This question was objected to by appellee, on the ground that the same was immaterial and irrelevant, and the objection was sustained. Had he been permitted to do so, he would have answered that Mr. Curb stated to him that appellee wanted too much rent in view of the bad repair of the house.

We think that, appellee having drawn from the witness a part of the conversation between himself and Mr. Curb as to the rental price of the property, the court should have permitted the appellant to introduce the remainder of the conversation relative to the same matter; and the thirteenth assignment of error raising the point is sustained.

[12] The fourteenth assignment complaining of the action of the court in sustaining objections to the testimony of the witness Taylor, if error, was harmless error, in view of the fact that the substance of the testimony of the witness was afterwards admitted; and the same, also, may be said of the action of the court in refusing to permit the introduction in evidence of the map of the city of Houston in connection with the testimony of the witness B. C. Morgan, the facts desired to be proved by this evidence being otherwise fully shown.

We have examined all of appellant's assignments, and are of the opinion that, except as hereinbefore stated, none of them points out reversible error. For the errors indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.