INTERNATIONAL & G. N. RY. CO. v. BARTEK. (No. 5460.) †

(Court of Civil Appeals of Texas. Austin. March 31, 1915. Dissenting Opinion, April 10, 1915. On Motion for Rehearing, June 2, 1915.)

1. APPEAL AND ERROR ☞263—EXCEPTIONS—NECESSITY.

Assignments of error complaining of the charge given cannot be reviewed, where no bills of exceptions were taken to the charge.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1523, 1525–1532; Dec. Dig. ☞263.]

2. CARRIERS ☞316 — CARRIAGE OF PASSENGERS—BURDEN OF PROOF.

A passenger, who alleged specific negligence as the cause of an accident, has the burden of proving the negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1261, 1262, 1283, 1285–1294; Dec. Dig. ☞316.]

3. APPEAL AND ERROR ☞263—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

In an action against a railroad company, no exception was taken to an erroneous charge, though the company requested a correct charge in conflict with the one given. Acts 33d Leg. c. 59, declares that the ruling of the court in giving or refusing instructions shall be regarded as approved unless excepted to. Held, that an assignment complaining of the refusal of the requested charge could not be reviewed; the company having acquiesced in the one given which was in conflict therewith.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1523, 1525–1532; Dec. Dig. ☞263.]

4. TRIAL ☞260—INSTRUCTIONS—REFUSAL.

The refusal of charges covered by those given is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

5. APPEAL AND ERROR ☞1067 — REVIEW — HARMLESS ERROR.

In a personal injury action, where plaintiff claimed nothing for a slight defect in his hand which he had had for many years, the re-

---

fusal of a charge that no recovery could be had therefor was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ☞1067.]

On Motion for Rehearing.

6. APPEAL AND ERROR ☞1170 — REVIEW — HARMLESS ERROR.

Under Court Rule 62a (149 S. W. x), requiring the disregarding of immaterial error, an erroneous charge, placing on defendant the burden of proving its freedom from negligence, will not be considered prejudicial, where the evidence greatly preponderated in plaintiff's favor.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540-4545; Dec. Dig. ☞1170.]

7. DAMAGES ☞206—PHYSICAL EXAMINATION OF PLAINTIFF.

In a personal injury action, where plaintiff exhibited his back to the jury and consented to defendant's examination before them, but refused to submit to having an X-ray photograph taken by a person offered by defendant, though offering to consent to have it taken by another expert, the refusal of the court to compel plaintiff to submit was not an abuse of discretion.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 531; Dec. Dig. ☞206.]

Key, C. J., dissenting.

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Action by John Bartek against the International & Great Northern Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Neff & Taylor, of Waco, for appellant. R. H. Kingsbury and E. J. Clark, both of Waco, for appellee.

Findings of Fact.

JENKINS, J. This is a suit brought by appellee to recover damages for personal injuries alleged to have been suffered by reason of the negligence of appellant. Appellee alleged that he was a caretaker on a car in which was being shipped household goods belonging to his father, and as such caretaker was a passenger on appellant's road. The negligence alleged was that defendant's line of track and roadbed were not properly or adequately ballasted; that the rails were loose and insecurely fastened to the ties; that the ties were old and worn, and the general condition of said track was unsafe and dangerous for the transportation of freight and passengers at the time in question; that at the time of the wreck the defendant's train was being operated at a rate of speed which, by reason of the unsafe condition of the track, was dangerous.

Appellant excepted to that portion of plaintiff's petition which alleged that the general condition of said track was unsafe and dangerous, which exception was by the court sustained, and appellee thereupon filed a trial amendment, omitting such general allegation. Appellant specially denied that its roadbed was not properly or adequately ballasted, that the rails were loose or insecurely fasten-

ed to the ties, or that the ties were old and worn, or that at the time of the wreck it was operating its train at a rate of speed which was dangerous, taking into consideration the condition of the track, and specially alleged to the contrary; and further:

"That it does not know the cause of the wreck, unless it be that the same was caused by reason of unprecedented rainfall and overflow, at and around and about said point on its track and throughout a large area of territory throughout Central Texas, especially that portion of Texas through which the Brazos river runs and is traversed by this defendant's line of road, and that such wet and overflowed condition was caused and occasioned by the act of God; that the entire country for many miles around and about the point where this accident occurred had, for a number of days, been flooded by unusual and unprecedented rainfalls, and this defendant believes that said unprecedented rainfalls and the act of God were the direct and proximate cause of the injury complained of by this plaintiff, and for which it is in no sense liable."

Appellee by supplemental petition denied the alleged facts constituting the act of God. Appellant also pleaded that appellee was guilty of contributory negligence in riding in the car containing the shipment in question, instead of riding in the caboose of such train, in that he chose the more dangerous of the two places in which to ride, which allegation was specially denied by appellee.

The evidence shows that appellee was a caretaker, riding in a car containing household goods and animals belonging to his father; that he was properly in said car, and was not guilty of contributory negligence by riding therein; that the car in which he was riding, and other cars in said train, turned over; that the wreck was not occasioned by the act of God as alleged by appellant; that by reason of said accident he suffered serious and permanent injuries; that at the time of the wreck the train was being operated at the rate of about 40 miles an hour.

The trial before a jury resulted in a verdict and judgment in favor of appellee for the sum of $2,000. No error is assigned as to the amount of said judgment.

Opinion.

[1] Appellants' first, fourth, fifth, sixth, seventh, eighth, and ninth assignments of error relate to the charge given by the court. No bills of exception were taken to the charge of the court, for which reason these assignments will not be considered. This point has been so frequently decided by this and other Courts of Civil Appeals as to render it unnecessary to cite authorities in support of this ruling.

[2, 3] Appellant's second assignment of error is as follows:

"The court erred in refusing to give special charge No. 4 requested by the defendant, which is as follows: 'You are instructed that the burden of proof is on the plaintiff to show by a preponderance of the evidence that the wreck in question was caused by one or more of the acts of negligence complained of by plaintiff in his

petition, and, unless he has done so, you will return a verdict for the defendant. And even though you may believe from the evidence that the defendant was guilty of negligence in some other respect than that alleged by the plaintiff, and that such negligence caused the injuries complained of, you should find for the defendant.'"

The court in its principal charge set out fully the allegations in the pleadings of both plaintiff and defendant, and instructed the jury as follows:

"You are instructed that if you believe from the evidence that defendant's roadbed was not properly or adequately ballasted, so as to make the same secure or firm as a foundation for its line of track, or that the rails thereof were loosely or insecurely fastened to the ties, or that the ties were old and worn, or if you should believe from the evidence that defendant's train at the time of the wreck in question was being propelled at a rate of speed which, by reason of the condition of the track, was dangerous, and that by reason of any or all of said conditions, if any, defendant's train was caused to wreck, and you believe that defendant in any or all of these respects had failed to use the highest degree of care in the manner as hereinbefore charged you, you are instructed that defendant would be guilty of negligence; and, if you so believe from the evidence that the plaintiff was injured as a direct and proximate result thereof, you are then instructed to find for the plaintiff."

The court further instructed the jury that the burden was on the plaintiff to establish by preponderance of the evidence whether or not he has suffered injury and damage, as alleged by him, as the proximate result of such wreck, and that the burden was on the defendant to establish, by a preponderance of the evidence, the fact that said wreck was not caused by its failure to exercise the highest degree of care in any of the ways as alleged by the plaintiff as the proximate cause of his injuries, if any.

The charge of the court in placing the burden on the defendant to establish by a preponderance of the evidence its lack of negligence was erroneous, and the special charge requested is the law of the case and should have been given. The Court of Civil Appeals for the Second District, in Railway Co. v. Barnes, 168 S. W. 992, and in Elser v. Putman, 171 S. W. 1052, held that under the act of 1913 (Gen. Laws, p. 113) the failure to give a special charge, though correct, would not be considered where it contradicted the general charge to which no exception was taken. We quote from the opinion in Railway Co. v. Barnes, supra, as follows:

"'Article 2061. The ruling of the court in the giving, refusing or qualifying of instructions to the jury shall be regarded as approved unless excepted to as provided for in the foregoing article.' * * * If, as provided by the amended statutes, a charge given without objection must be regarded as approved, it follows logically, we think, that parties who thus approve the charge are in the same situation as if that charge had been requested by them. And according to a well-established rule of decisions in force before the enactment of that statute, if a party requests two different instructions upon the same issue and one of them is given, he cannot complain of the refusal of the other.'"

The statute requiring objections to the charge given by the court to be shown by a bill of exceptions in order to bring them to this court for review is mandatory, as this and other Courts of Civil Appeals have frequently held; and the language that "the ruling of the court in giving, refusing or qualifying of instructions to the jury shall be regarded as approved, unless excepted to," is plain and unambiguous, and we concur in the ruling of the Court of Civil Appeals of the Second District in its construction of this statute as above set out, for which reason we overrule appellant's second assignment of error.

Should we have considered said second assignment, we would not have held that the error complained of was reversible error under rule 62a for the government of the Courts of Civil Appeals. The finding of the jury in appellee's favor under the charge of the court necessarily included the finding as a fact that appellant's roadbed was defective in the manner alleged by appellee. The evidence sustains this finding, and we do not believe that their verdict would probably have been different had the court charged that the burden of proof as to such conditions was on appellee. Therefore, believing that the error complained of was not calculated to cause, and probably did not cause, the rendition of an improper judgment in the case, we would have been constrained to overrule appellant's second assignment of error, had we felt at liberty to consider the same.

Appellant's third assignment relates to the refusal of the court to peremptorily instruct the jury to return a verdict for the defendant. For the reasons above stated, this charge was properly refused. In this connection we will state that there was no testimony raising the issue of contributory negligence on the part of appellee; for which reason we overrule appellant's tenth assignment of error.

[4] There was no error in refusing appellant's special charge No. 5 for the reason that the matters therein set out were sufficiently submitted in the principal charge of the court, and by special charge No. —— given at the request of appellant, for which reason we overrule the eleventh assignment of error.

[5] The twelfth assignment of error complains of the failure of the court to give the following special charge:

"You are instructed that, should you believe from the evidence that John Bartek had a defective hand and arm before the alleged wreck, then in that event defendant would not be liable to plaintiff for damages for the defects in said hand as it was prior to said wreck."

The thirteenth assignment relates to the same matter. The evidence showed that appellee had a slight defect in his left hand from infancy, but that the same did not materially interfere with his capacity to labor. Plaintiff did not claim any damages by reason of any permanent injury to said hand or arm;

and while it might have been proper, out of abundance of caution, to give the requested charges, we do not think, under the evidence in the case, that the failure to do so was reversible error.

The special charges requested by appellant, as shown by its fourteenth and fifteenth assignments of error, were substantially given in the main charge and in the special charge given at the request of appellant, for which reason we overrule said assignments. As an additional reason for overruling the twelfth and thirteenth assignments, we call attention to the fact that appellant did not allege that the verdict was excessive.

The writer here takes occasion to state as his personal opinion that although a plaintiff who has alleged specific acts of negligence ought not to be allowed to recover where the evidence shows that the cause of the injury was some other act, though the same be negligence on the part of the railway company, still the doctrine of res ipsa loquitur should apply where a passenger is injured in a wreck, in so far as concerns the special acts of negligence alleged. The general rule which requires a plaintiff to specifically allege his cause of action is based upon the theory that a defendant ought to be notified of what he is required to meet. This rule, under all of the decisions, does not apply in case of injury to a passenger where he alleges acts of negligence generally, for the reason that the wreck speaks for itself, and shows that it would probably not have happened but for some act of negligence on the part of the railway company; and, in such case, the railway company must assume the burden of proof and come prepared to prove that it was not guilty of any act of negligence which caused the wreck. Such being the law, it occurs to the writer that, when specific acts of negligence are alleged, a railway company ought to come prepared to prove that such negligence did not exist. The reason for the rule which shifts the burden upon the railway company to show lack of negligence, where the allegation is one of general negligence, is that it is presumed to have peculiar knowledge as to the condition of its roadbed and cars, and the manner in which the same are operated. I think the same presumption should exist as to the matters specifically alleged, and that, to this extent, proof of the wreck should be presumptive evidence of negligence in the manner alleged. The writer, however, in this matter, speaks only for himself and not for this court.

The appellee objects to our considering any of appellant's assignments of error with reference to the refusal of the court to give the special charges requested, for the reason that each of the bills of exception thereto is approved in the following manner:

"Approved with the qualification that I have no recollection whatever as to whether or not the defendant excepted to such action of the court."

The purpose of the qualification to a bill of exception by a trial judge is to show that some one or more fact alleged in such bill is not true, or to show some other fact in justification of the ruling of the court. This alleged qualification does neither, and is not, in any proper sense, a qualification of the bills of exception. By approving the bill, the trial judge, in effect, states that the facts therein alleged are true. Whether he came to such conclusion from his independent memory or from notes made by him at the time, or in some other undisclosed manner, is no affair of the appellate court.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.

KEY, C. J. (dissenting). Being unable to concur with his Associates in the conclusion that the judgment in this case should be affirmed, it becomes the writer's duty to state the reasons for his dissent. It is correctly held by the majority opinion that the charge of the court, in placing the burden of proof on the defendant to show that it was not guilty of negligence, was erroneous, and that appellant's special charge, placing that burden upon the plaintiff, should have been given although Mr. Justice Jenkins expressed his individual view to the contrary. Railway Co. v. Thomas, 132 S. W. 974, and authorities there cited. The following quotation from the opinion in that case is not inappropriate:

"If the plaintiff had merely charged in his petition that the defendant was guilty of negligence in permitting the two trains in question to collide, and that the plaintiff was unable to allege and prove the particular act or omission which constituted the defendant's negligence, the court's charge, and its ruling in refusing the requested instruction directing a verdict for the defendant, would have been correct. But, inasmuch as the plaintiff saw proper to enter into details and specify particular acts or omissions as constituting the defendant's negligence, then by so doing he waived his right * * * to rely upon the doctrine of res ipsa loquitur, applicable to cases of this class. The rule on this subject is well stated in the following excerpt from the opinion of the court in Gibler v. Railway Co. [148 Mo. App. 475], 128 S. W. 791, above cited:

"'We do not hesitate to express the opinion, as was done on the former appeal, that the doctrine referred to might have been invoked by plaintiff had he relied solely upon a general charge of negligence against defendant, for it seems that the uncoupling of a freight train in the circumstances stated, while running over the tracks at * * * 20 or 25 miles an hour, is such an unusual and extraordinary occurrence as to bespeak the want of due care on the part of the defendant in some respect or somewhere. It may be the negligence was in the operation of the locomotives, or it may be in the construction or defective condition of the couplings, or it may lie in the defective condition of the roadbed; but, though the fact in and of itself indicates negligence, no one can say that it points to the engineer as the negligent party. As suggested, the fact may point negligence, but what particular negligence it indicates is another question. The plaintiff in his petition points to the negligent acts of the engineer as those upon which he relies for a recovery, and fails to give any proof to sustain the charge. It is

clear enough that, although the fact of the accident bespeaks negligence, no one can say that of itself it indicates or tends to prove negligence in the engineer any more than it tends to prove negligence in the condition or construction of the couplings.

" The general rule obtains to the effect that the specific acts of negligence pleaded and relied on for recovery must be proved. Waldhier v. H. & S. J. R. R. Co., 71 Mo. 514; Price v. St. Louis, etc., Ry., 72 Mo. 414; Bunyon v. Citizens' Ry., 127 Mo. 12, 29 S. W. 842; Ely v. St. Louis, etc., Ry., 77 Mo. 34; McGrath v. St. Louis Transit Co., 197 Mo. 97, 94 S. W. 872; Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929; Beave v. St. Louis Transit Co., 212 Mo. 331, 111 S. W. 52. In proper cases, when the allegation of negligence is general in character only and unaccompanied by a recital of the specific acts which go to the breach of duty relied upon, the doctrine of res ipsa loquitur may be invoked. The rule permitting a presumption of negligence to suffice for plaintiff proceeds on the theory that it is easily within the means of defendant to show there was no dereliction on his part, if such be the fact, while the plaintiff would labor under a great disadvantage if the burden to show the particular acts of negligence continued with him. Roscoe v. Met. St. Ry. Co., 202 Mo. 576, 101 S. W. 32; Orcutt v. Century Bldg. Co., supra; Feary v. Met. St. Ry. Co., 162 Mo. 75, 62 S. W. 452; Malloy v. St. Louis & S. R. Co., 173 Mo. 75, 73 S. W. 159; Gilber v. Q. O. & K. Ry. Co., 129 Mo. App. 93, 107 S. W. 1021; Briscoe v. Met. Street Ry. Co., 222 Mo. 104, 120 S. W. 1162.' "

But this court in the majority opinion holds that, inasmuch as appellant failed to make a specific objection to the court's charge on the burden of proof, and failed to except to the action of the court in overruling such objection, it is now precluded from complaining of that charge and the action of the court in refusing to give the requested instruction placing the burden of proof upon the plaintiff, although a bill of exception was reserved to such refusal. In that ruling this court follows the case of Railway Co. v. Barnes, 168 S. W. 992, decided by the Ft. Worth Court of Civil Appeals. The case cited construes articles 1971, 1973, 1974, and 2061 of the Revised Statutes as amended by the Legislature in 1913 (Acts 33d Leg. c. 59 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 1971, 1973, 1974, 2061]). It is true that article 1971 which requires the judge to submit his charge to the attorneys for inspection and allow a reasonable time for objection thereto, does prescribe that all objections not made to the charge before it is read to the jury shall be considered as waived; and article 2061 declares that rulings of the court in giving, refusing, or qualifying instructions to the jury shall be regarded as approved, unless excepted to; and, in view of these provisions, it was held in the case cited that an appellant who had not brought up a bill of exception showing that he had made timely objection to the action of the court in submitting the case to the jury in his charge was precluded from complaining of the action of the court in refusing to give a peremptory instruction directing a verdict for the appellant, and the reason for so holding was stated as follows:

"If, as provided by the amended statutes, a charge given without objection must be regarded as approved, it follows logically, we think, that parties who thus approve the charge are in the same situation as if that charge had been requested by them. And according to a well-established rule of decisions in force before the enactment of that statute, if a party requests two different instructions upon the same issue, and one of them is given, he cannot complain of the refusal of the other. The evident purpose of the act referred to was to require the trial judge to be given the full benefit of any objections to his charge to the jury that might be urged upon appeal, to the end that the charge as finally submitted to the jury may be so framed as to avoid such objections."

The majority of this court approves that decision, but the writer does not. Generally speaking, the rule there announced may be correct; but it was not applicable to that, nor is it applicable to this, case. The purpose of the Legislature in prescribing that all objections not made before the charge is read to the jury shall be considered as waived, and that the action of the court in giving, refusing, or qualifying instructions shall be regarded as approved unless excepted to, was to prevent the reversal of cases for errors which might have been corrected by the trial court if such errors had been pointed out in that court. As the law existed prior to that time, an appellant was not required to complain of the action of the court in giving or refusing instructions, either at the time of the trial or in his motion for new trial, but could make such complaint for the first time in his assignments of error, which he was not required to file until after the court adjourned. The result was that many cases were reversed on account of errors which probably would have been corrected in the trial court if the error had been pointed out in that court; and no doubt the purpose of the amendment was to prevent that evil and thereby diminish grounds for appeals and reversals. In order to accomplish that wise purpose, the amendment requires the dissatisfied litigant to bring up a record which will show that he objected to the action of the trial court in giving, refusing, or qualifying an instruction and reserved an exception to the action of that court in not sustaining his contention. In the opinion of the writer that is the spirit and meaning of the amendments referred to, and it is believed that appellant has substantially complied with the statute as thus amended.

Appellant has assigned error upon the court's charge instructing the jury that the burden of proof was upon appellant, and upon the refusal to give a special charge asked by appellant, instructing the jury directly to the contrary, and stating that the burden of proof was upon the plaintiff to show by preponderance of the evidence that the wreck in question was caused by one or more of the acts of negligence set out in the plaintiff's petition. As those two assignments relate to the same question of law, counsel for appellant have very properly presented them

together in their brief and under them submit the proposition, which this court holds to be correct, which, in substance, is that when a passenger sues to recover damages caused by the derailment of a train, and pleads specific acts of negligence, the burden rests upon him upon the issue of negligence so pleaded. But a majority of this court, following a decision made by two of the members of the Ft. Worth Court of Civil Appeals (one judge being absent) holds that appellant must be held to have acquiesced in the court's charge upon the burden of proof, because it has not brought up another bill of exception showing specifically that it objected to that part of the court's charge and reserved an exception to the action of the court in overruling that objection. That holding is based upon a construction of the statute which, in my opinion, is entirely too narrow and technical. As before said, the purpose of the amendment was to prevent objections being made on appeal to the action of the trial court in giving or refusing instructions to the jury, when such objection was not made at a time when it could have been considered by the trial court. Now it seems to me to be illogical to hold that, while appellant has reserved a bill of exception to the action of the trial court in refusing to instruct the jury that the burden of proof was upon the plaintiff, nevertheless he must be held to have approved the action of the court in charging the jury exactly to the contrary. It would seem to be illogical, if not absurd, to say that, when one is complaining because a certain thing was not done, he is at the same time consenting to what was done when that was the very reverse of what he contends should have been done; and it is not believed that the statute in question was intended to produce any such result. Appellant's request to have the jury instructed that the burden of proof was upon the plaintiff, and its exception to the action of the trial court in refusing to do so, must necessarily have apprised that court of the fact that appellant challenged the correctness of the court's charge upon the burden of proof. If the requested instruction, to the refusal of which appellant excepted, had been given, the trial court would have been compelled to omit or change its charge upon the burden of proof; otherwise it would have been placed in the attitude of giving charges that were diametrically opposed to each other, a contingency not to be supposed. As to the burden of proof, there was but one question for the trial court to consider, viz., did the law place it upon the plaintiff or the defendant? That court held that the law placed it upon the defendant, and the bill of exception shows that the defendant objected to that ruling, because it reserved an exception to the action of the court in refusing to give a charge which would have placed the burden of proof upon the plaintiff. Hence the writer concludes that, in as much as appellant is prop-erly complaining of the action of the court in refusing to give its requested instruction upon the burden of proof, which instruction is directly the converse of that given by the court, it should be held by this court that the act of appellant in requesting the refused instruction constituted a sufficient objection to the court's charge upon that subject, and the case should be reversed because of the error in the court's charge, and the refusal to give the requested instruction.

In Cleburne Street Ry. Co. v. Barnes, supra, an application for writ of error was made to and refused by the Supreme Court; but the writer of this opinion has examined that application and finds that it did not present the question above discussed. With due respect to his Associates and the Ft. Worth Court of Civil Appeals, this writer believes that in the construction they have placed upon the statute they have given too much effect to literalism and not enough to that general rule of statutory construction prescribed in the final title of the revised statutes of this state to the effect that statutes are to be liberally construed with a view to accomplishing the legislative purpose and promoting the ends of justice, which rule was applied by our Supreme Court in Land Co. v. McClelland Bros., 86 Tex. 179, 23 S. W. 576, 22 L. R. A. 105, where it is said:

"It is to be borne in mind that the statute and rules which require errors to be assigned were intended primarily for the relief of the appellate courts, and to secure a prompt dispatch of the business that should be brought before them. They should be given a reasonable and practical construction, and not one calculated to embarrass suitors in the appellate tribunals by unnecessary restrictions. It is certain that it was never intended to hedge either the Court of Civil Appeals or the Supreme Court around with technical and arbitrary requirements, so as to cut off the approach of such parties as seek relief in good faith from the consequences of supposed errors committed to their prejudice in the trial courts."

But it is stated in the majority opinion that, if the assignments complaining about the charge upon the burden of proof had been considered, the case would not have been reversed, because of rule 62a (149 S. W. x), and the fact that evidence was submitted which would sustain a finding of negligence against appellant, and therefore it is not believed that a different verdict would probably be rendered upon another trial; for which reason it is held in the majority opinion that the error as to the burden of proof was not calculated to cause, and probably did not cause, the rendition of an improper judgment. The writer has given that branch of the case much consideration, and deems it proper to say that the testimony bearing upon the question of negligence as charged against appellant was not such as would have justified the trial court in directing a verdict for the plaintiff. If it be conceded that, under a charge placing the burden of proof upon the plaintiff, the evidence brought up in the record would justify a finding

against the defendant upon the question of negligence, nevertheless it is not of that convincing character which leaves no room for honest difference of opinion, and a plausible argument could be made on the other side of that question. Therefore if the verdict had been in favor of the defendant, I apprehend this court would not have set it aside as being unsupported by testimony. This being the state of the record, it does not seem to me that this court ought to dispose of the appeal upon the assumption that another jury, when properly instructed as to the burden of proof, would and should find that the defendant was guilty of negligence. Negligence is a question of fact, and appellant has the right to have that question of fact decided by a jury, aided by proper instruction as to the law. The right of trial by jury is guaranteed by the Constitution. If that right has been impaired by an improper instruction of the trial court, the only adequate remedy would seem to be another jury trial under proper instructions; and that remedy ought not to be denied because an appellate court may entertain the belief that another trial would not probably result in a different verdict, unless the uncontroverted testimony would have justified the trial court in directing a verdict for the party in whose favor the jury found.

While there may be expressions in a few cases tending to the contrary, there is a long line of decisions by our Supreme Court holding that where the trial court has committed a material error, calculated to injure the complaining litigant, the judgment should be reversed, unless it is made to appear that no injury in fact resulted. In Bailey v. Mills, 27 Tex. 438, the Supreme Court said:

"It is the practice of this court to reverse a judgment whenever there is an erroneous instruction upon a material point which may have influenced the jury in finding the verdict, although the evidence may appear to us to be sufficient to sustain the verdict; and the reason of the rule is that it is impossible to know what effect the instruction had upon the minds of the jury, how much the verdict is due to the instruction, and how much to the evidence; and in a case of conflicting evidence it is impossible to know that it would lead the minds of the jury to the same conclusion as the minds of this court."

And in G., C. & S. F. Railway Co. v. Johnson, 91 Tex. 572, 44 S. W. 1067, the same court, speaking through Mr. Justice Brown, who is now its Chief Justice, said:

"The charge being erroneous, it is presumed to have been injurious to the interests of the defendant, and 'in such case the duty does not devolve upon the party complaining to show that he was thereby injured, but upon him in whose favor the verdict was returned, to show that the complaining party was not prejudiced by the error.' G., C. & S. F. Ry. Co. v. Greenlee, 62 Tex. 349; Emerson v. Mills, 83 Tex. 388 [18 S. W. 805]. * * *
"When a positive error has been committed, the court cannot enter into speculation as to what conclusions the jury may have arrived at, in order to avoid the force and effect of such error upon a verdict, and more especially is this true in a case like the present, where the law in a large measure commits to the common sense and sound discretion of the jury the amount to be assessed. But in such a case the rule laid down in the cases above cited must be enforced, and if it does not appear from the record that the error was harmless, the judgment based upon such error must be reversed."

But it is believed by some members of the bench and bar (Wells Fargo & Co. v. Benjamin, 165 S. W. 120) that the wise and just rule referred to has been abolished by rule 62a, which was adopted by the Supreme Court in 1912, and which reads as follows:

"62a. No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court; and if it appear to the court that the error affects a part only of the matter in controversy, and the issues are severable, the judgment shall only be reversed and a new trial ordered as to that part affected by such error. Provided, if the erroneous action or failure or refusal of the trial judge to act shall prevent the proper presentation of a cause to the Court of Civil Appeals, and be such as may be corrected by the judge of the trial court, then the judgment shall not be reversed for such error, but the appellate court shall direct the said judge to correct the error, and thereafter the court of civil appeals shall proceed as if such erroneous action or failure to act had not occurred."

Apparently, there is a conflict between the decisions rendered by the Supreme Court and the first part of the rule above quoted adopted by the same court. The former had established the doctrine that when it was shown that material error had been committed in the trial of the case, which was calculated to prejudice the rights of the complaining litigant, the judgment should be reversed, unless it was also made to appear that such litigant did not in fact sustain injury as a result of the error, while the latter prescribes that the case shall not be reversed unless it appears that the error was reasonably calculated to and probably did cause the rendition of an improper judgment. In writing the first few lines of that rule, the Supreme Court followed the law as it was well established by its own decisions; but, when it inserted the words "and probably did," it seems to have made a rule which, if construed literally, is in conflict with and overrules many of its former decisions, including the one written by Chief Justice Brown in the Johnson Case. Section 25 of article 5 of the Constitution confers upon the Supreme Court "power to make and establish rules of procedure, not inconsistent with the laws of the state, for the government of said court and the other courts of this state, to expedite the dispatch of business therein." The power there conferred is not the unlimited power which that court

may exercise in deciding cases to declare and promulgate rules of law by which the rights of litigants are to be determined, but the power therein conferred is limited to the making of rules of procedure, not inconsistent with the laws of the state, and for the purpose of expediting the dispatch of business in the courts. Under the provisions of the Constitution referred to, and from which that court derives its power to make rules, it may be seriously questioned if the Supreme Court has the power, when acting alone under that provision, to establish a rule of law prescribing when the Courts of Civil Appeals may affirm or when they may reverse cases; and for that reason, and for reasons hereafter given, I prefer to adhere to the law as declared by that court in concrete cases, rather than that seemingly established and promulgated by rule 62a. Whatever will aid a Court of Civil Appeals in reaching a final decision will expedite the business of the court, but the character of judgment which it may decide to render can have no bearing whatever upon the dispatch of business. All the cases upon the dockets of those courts could be reversed as expeditiously as they could be affirmed, and therefore it would seem that a rule directing when a case should be affirmed or reversed should not be denominated a rule for the purpose of expediting the dispatch of business. I make no point upon the fact that the Constitution expressly denies to the Supreme Court the power to make rules "inconsistent with the laws of the state," for the reason that the word "laws," as there used, perhaps has reference to those laws embodied in the Constitution and statutes; but, in view of that provision, I apprehend that the Supreme Court would hesitate long before it would intentionally adopt a rule, the effect of which would be to overrule its own decisions and change a well-established principle of substantive law.

If it is to be the established law in this state that no case is to be reversed, although the complaining party may show that material error was committed at the trial, which error was calculated to injure him, unless it is also made to appear that in fact injury did result, then gross injustice will be done in many cases, for the reason that it will be impossible for the complaining litigant to show what effect the error complained of had upon the minds of the judge or jurors who decided his case. If it were practical to do so, the law provides no means by which the complaining party can show to an appellate court the precise effect which an erroneous charge had on the minds of the jury; and it is for that reason that our own Supreme Court, and perhaps all other appellate courts, have declared and applied the wise and just rule, to the effect that when it is made to appear that material error was committed, which was calculated to prejudice the rights of the complaining litigant, the judgment should be reversed, unless it is shown that it did not have that effect. Furthermore, while rule 62a was made for the government of the Courts of Civil Appeals, when a case is carried to the Supreme Court, the rule should have as much application in that court as in the Courts of Civil Appeals; but the latter court, in disposing of the case of Scott v. Townsend, 166 S. W. 1138, decided nearly two years after rule 62a was promulgated, did not depart from its former decisions on account of rule 62a, but reversed the case because the trial court had permitted improper testimony to go to the jury. In that case a daughter by a former wife was contesting the probate of a will executed by her father upon allegations that its execution was procured by undue influence exercised by the second wife, who was the stepmother of the contesting daughter. The decision of the case by the Court of Civil Appeals is reported in Scott v. Townsend, 159 S. W. 342; and, after holding that the testimony complained of was admissible, that court, in effect, held that if it was in error in that holding, still, under rule 62a, the judgment should not be reversed, because there was nothing in the record to indicate that the jury had been improperly influenced by the testimony complained of. In other words, the Court of Civil Appeals seems to have held that as it was not made to appear that the testimony referred to probably caused the jury to return an improper verdict in favor of the contestant, under rule 62a the case should not be reversed. A reading of the opinions of the Court of Civil Appeals and of the Supreme Court in that case indicates that there was sufficient testimony, outside of that held by the Supreme Court to be inadmissible, to support the verdict of the jury in finding for the contestant, and therefore no appellate judge could know or properly say that if the objectionable testimony had been excluded the verdict would probably have been different, and yet the literal reading of rule 62a seems to declare that the case should not have been reversed, unless the appellate court was prepared to so hold, and the Court of Civil Appeals seems to have so construed and applied that rule. But, when the Supreme Court dealt with the case, nowhere throughout its elaborate and interesting opinion was rule 62a mentioned; and, after holding that some of the testimony complained of was not admissible, that court, speaking through Mr. Justice Phillips, said:

"That this incompetent testimony was likewise prejudicial to the plaintiffs in error is, in our opinion, not open to question. It afforded direct proof, through a statement made by the testator himself, of one of the most important features of the issue in the case. The theory of the contestant being that the exertion of undue influence by the testator's wife produced the will, proof of effort on her part to have him make it necessarily supplied a strongly persuasive circumstance in support of that position. It was as cogent a fact as could be pro-

duced to establish the exertion of the alleged influence, since under the issue it was subject to be construed, both as an attempt to practice it, and as expressly marking its direction towards the object of its alleged exercise. Incompetent testimony of such force and capable of such effect under this issue cannot, in our judgment, be treated as harmless. A legal trial is as important as a correct result. We have no disposition to lightly reverse the action of a trial court. Without any tendency to emphasize errors that are immaterial, its judgment should be accorded the presumptions the law imparts to it. But the rules of law, by whose observance only can rights be legally determined, are entitled to the same deference, and have an equal claim upon the conscience of a court. * * * On account of the erroneous admission of the testimony we have indicated, the judgments of the district court and the honorable Court of Civil Appeals are reversed, and the cause remanded."

So, it appears in that case that the Supreme Court, in effect, followed its former decisions, which indicates that it did not intend that rule 62a should have the effect of overruling those decisions.

The decision of the Supreme Court in Scott v. Townsend, supra, is the last utterance of that court upon the subject, and, for that reason, and because it applies a principle of law based upon right and justice, and because it is difficult to believe that it was the intention of the Supreme Court, in adopting rule 62a, to overrule its decision in Railway v. Johnson, supra, and the long line of cases back of that case, I am not willing to depart from the wise rule announced and applied in those cases. No case should be reversed on account of technical or immaterial error; but when it is shown that material error has been committed, calculated to prejudice the rights of the complaining litigant, and when it is not made to appear that such error did not have an injurious effect, then the case should be reversed; and, in my judgment, the instant case belongs in that category.

The decision rendered by the majority of this court is in direct conflict with the decision of the Supreme Court in Dwyer v. Continental Ins. Co., 57 Tex. 181, upon identically the same question. In that case, Dwyer, as assignee of A. M. White, sued upon a policy of fire insurance. The defendant charged that White, the owner of the property, had caused it to be burned; and the court instructed the jury that the burden of proof rested upon the plaintiff upon that issue. In reversing the case the Supreme Court, speaking through Mr. Justice Stayton, said:

"The court in effect instructed the jury that they must find for the defendant unless the plaintiff produced a preponderance of evidence to show that the insured property was not burned by A. M. White or his procurement. This was error, unless the presumption is that the owner of insured property burns, or causes property to be burned, whenever it is lost by fire. There is no such presumption, but the contrary presumption does exist. It is contended that the preponderance of evidence is so greatly in favor of the proposition that the insured property was burned by White or his agency, that the judgment should not be re-

177 S.W.—10

vised, even if the court did err in giving and refusing the charges above referred to. We are not authorized to nicely weigh the evidence, and to dispose of the case as the jury might have done under proper instructions. The appellant was entitled to have the jury pass upon the evidence under a proper charge."

Believing that the law as announced and applied in that and many other cases decided by the Supreme Court is sound and correct, I am not willing to hold that that and the other cases referred to have been overruled by rule 62a, until the Supreme Court, in an opinion rendered in the decision of a case, shall so declare. I concur with Mr. Justice PHILLIPS that "a legal trial is as important as a correct result," and with Mr. Justice STAYTON that "the appellant was entitled to have the jury pass upon the evidence under a proper charge."

### On Motion for Rehearing.

JENKINS, J. The appellant bases its motion for rehearing in part on the views expressed by Mr. Chief Justice KEY in his dissenting opinion herein, for which reason we feel called upon to review that opinion.

It was with much reluctance that we felt constrained to differ from the learned Chief Justice of this court in our original opinion herein. We have read his able dissenting opinion with much interest. To our minds, in that portion of said opinion which discusses the act of 1913 with reference to charges given and refused, he has allowed his zeal for what he conceives the law should be to obscure his vision as to what the law is.

This court, with the concurrence of Chief Justice KEY, has held that the statute requiring bills of exception to be taken to the charge of the court as a prerequisite to assigning error thereon is mandatory. Railway Co. v. Battle, 169 S. W. 1050. And such is the effect of all of the decisions on this subject. Insurance Co. v. Rhoderick, 164 S. W. 1068; Roberds v. Laney, 165 S. W. 114; Railway Co. v. Crutchfield, 165 S. W. 553; Saunders v. Thut, 165 S. W. 554; Johnson v. Hoover, 165 S. W. 900; Railway Co. v. Wadsak, 166 S. W. 43; Railway Co. v. Culver, 168 S. W. 515; Railway Co. v. Brown, 168 S. W. 869; Heath v. Huffhines, 168 S. W. 974; Railway Co. v. Barnes, 168 S. W. 992; Railway Co. v. Tomlinson, 169 S. W. 218; Railway Co. v. Eldridge, 169 S. W. 376; Railway Co. v. Chumbley, 169 S. W. 1108; Railway Co. v. Smith, 170 S. W. 324; Conn v. Oil Co., 171 S. W. 522; Railway Co. v. Becker, 171 S. W. 1025; Elser v. Putnam, 171 S. W. 1052; Railway Co. v. Dickey, 171 S. W. 1099; Williams v. Phelps, 171 S. W. 1102; Gunter v. Merchant, 172 S. W. 191; Railway Co. v. Packing House Co., 172 S. W. 196; Darden v. Traction Co., 172 S. W. 201; Railway Co. v. Wheat, 173 S. W. 976; Capps v. Johnson, 174 S. W. 295; Railway Co. v. Graham, 174 S. W. 298; Franklin v. Railway Co., 174 S. W. 333; James v. Golson, 174 S. W. 689; Railway Co. v. Dawson, 174 S. W.

852; Sands v. Sedwick, 174 S. W. 897; Fuller v. L. & S. Com., 174 S. W. 932; Reed v. Ry. Co., 174 S. W. 957; Rogers v. Ezell, 174 S. W. 1012.

In none of the cases above cited was there a dissenting opinion. If anything can be settled by frequent decisions, it is settled in this state that an assignment of error as to a charge given cannot be considered unless a bill of exceptions has been reserved thereto. Such is the plain, unequivocal, and mandatory language of the statute, and so far as we know, there has been no decision to the contrary. The effect of the dissenting opinion is to overrule all of the decisions on this subject, and to hold that an assignment of error to a charge given may be considered, if it be made to appear in some other way than by a bill of exception that the appellant did not approve such charge. Some other way, in the language of the tradesmen, may have been "just as good," had the Legislature seen proper to allow it. But it has not, and in the language of the familiar hymn, "There is no other way." Railway Co. v. Wadsack, 166 S. W. 44. The other way suggested by the dissenting opinion is for the appellant to request a charge the opposite to that prepared by the court, and which he does object to being given. In Railway Co. v. Battle, 169 S. W. 1050, we held that the statute "precludes the consideration of any assignment of error as to the action of the court in giving * * * charges, unless such action be excepted to and presented by bill of exceptions." In Eldridge v. Railway Co., 169 S. W. 377, this court said: "We do not think that the objections to the charge of the court under the statute can be made through the medium of special charges." Where there is no ambiguity, there is no room for construction. Engelking v. Von Wamel, 26 Tex. 472; Fire Ass'n v. Love, 108 S. W. 160. The Legislature is the lawmaking power, and, when it speaks within its constitutional limits it is for courts, as well as all others, to obey.

The dissenting opinion indulges the presumption that appellant did not approve the charge given inasmuch as it requested a contrary charge. There is no room for presumption. The statute closes the door of inquiry by declaring that a failure to except to the charge given "shall be regarded" as approving the same. R. S. art. 2061. To "approve" is to pronounce good, proper, legal. Standard Dictionary. If presumptions are to be indulged, it might be presumed that a failure to object to the charge confirmed the court in its error. Ratified error is equivalent to invited error. If the appellant has been placed in an "illogical if not absurd position," it has no one to blame therefore but itself. It is presumed to have known the law and to have intended the consequences of its acts, when those consequences are plainly declared by the statute.

"The logic is that, if objections which could have been made are not made to the charge of the trial court, unless fundamentally erroneous, the litigant accepts the charge." Railway Co. v. Crutchfield, 165 S. W. 563.

Having accepted the charge as correct, he thereby invites the court to give the same.

For the reasons stated, we think the Court of Civil Appeals for the Second District was correct in holding that failure to except to a charge is by the statute made equivalent to requesting the same, and, if erroneous, it is invited error, of which the appellant cannot be heard to complain. Barnes v. Railway Co., 168 S. W. 992; Elser v. Putnam, 171 S. W. 1052; Railway Co. v. Wheat, 173 S. W. 970.

"Where a party expressly or impliedly asks that a designated ruling be made, he cannot avail himself of that ruling on appeal, although it may be material and may be exhibited by the record." Railway Co. v. Sein, 11 Tex. Civ. App. 386, 33 S. W. 559.

[6] The second point upon which the Chief Justice of this court dissents from the majority opinion herein relates to rule 62a. As we understand that rule, it does no more than to make clear what has always been the correct practice in this state, viz., not to reverse a case on account of immaterial errors of law committed on the trial. This rule has sometimes been departed from by attaching too much importance to errors of law committed by the trial court. We cannot agree to the proposition that "a legal trial is as important as a correct result." A correct result is the primary object sought by courts of justice in every case. A legal trial is important because it is the means by which a correct result is usually obtained. The books are full of the doctrine that a case will not be reversed on account of harmless error; but if legal error has been committed, though it be harmless, the trial, in a strict sense, has not been a legal one.

The "fly in the ointment" in rule 62a, as indicated by the dissenting opinion, is the insertion of the words "and probably did cause." See the rule as fully set out in the dissenting opinion. If the error was not "reasonably calculated" to cause the rendition of "an improper judgment," the court might well arrive at the conclusion that it did not "probably cause the rendition" of such judgment. The inquiry is made as to how the appellant can show that the error "probably did cause the rendition of an improper judgment." We answer by showing from the facts and circumstances as exhibited by the record that it was reasonably calculated so to do. This rule does not require that cases be affirmed when material error has been committed on the trial. An error that is not "reasonably calculated to cause * * * the rendition of an improper judgment" can in no sense be said to be material. That the error was not of this kind must be determined by the appellate court in every case where it holds such error to be harmless, and their name is legion.

Rule 62a, as we understand it, is not in conflict with Land Co. v. McClelland, 86 Tex. 179, 23 S. W. 576, 22 L. R. A. 105, in that it does not "hedge either the Court of Civil Appeals or the Supreme Court around with technical and arbitrary requirements, so as to cut off the approach of such parties as seek relief in good faith from the consequences of supposed errors committed to their prejudice in the trial courts." But the appellant having had "free access," and the Court of Civil Appeals or the Supreme Court having arrived at the conclusion that the error committed by the trial court was not prejudicial to his rights, the rule says that the case ought not to be reversed on account of such error.

We have not held, and do not hold, that where an erroneous charge has been given on the burden of proof the judgment should be affirmed, simply because the evidence favorable to the appellee is sufficient to sustain the verdict. What we hold is that, looking to all of the testimony for both appellant and appellee, if the preponderance of the evidence is so greatly in favor of the appellee that it is not probable that the verdict would have been different had a correct charge been given, the judgment should be affirmed; no other material error appearing of record. We agree that, "the charge being erroneous, it is presumed to have been injurious to the interest of the defendant." But this presumption is not a conclusive one, and is rebutted when an examination of the whole record reasonably shows that such was not the case. There was no occasion for the Supreme Court to refer to rule 62a in Scott v. Townsend, 166 S. W. 1138. In that case Mr. Justice Phillips, speaking for the court, said:

"That this incompetent testimony was likewise prejudicial to the plaintiff in error is, in our opinion, not open to question."

In such case rule 62a is not applicable; but we apprehend that it will not be contended that the admission of incompetent testimony over objection must necessarily lead to the reversal of a case, regardless of the probable effect of such testimony on the court or jury.

The other point discussed in the dissenting opinion relates to the private views of the writer, and not to anything involved in the majority decision.

[7] We were in error in saying that the seventh assignment of error related to the charge of the court. This assignment was based upon the refusal of the court to compel the appellee to submit to having X-ray photographs of his back taken to be exhibited to the jury. We do not think that the trial court abused its discretion in this matter. The facts of this case do not bring it within the rule announced in Railway Co. v. Anglin, 99 Tex. 349, 89 S. W. 966, 2 L. R. A. (N. S.) 1386; Railway Co. v. Langston, 92 Tex. 709, 51 S. W. 331; and Railway Co. v. Smith, 38 Tex. Civ. App. 507, 86 S. W. 943. We understand the doctrine announced in those cases to be that, while a party has the right, in the first instance, to refuse to submit his person to examination, yet by doing so, and being so examined by his own physician in the presence of the jury, he waives his privilege in this regard, and the opposite party is entitled to have a like examination made by his physician. In the instant case the appellee exhibited his back to the jury, and his physician pointed out thereon the evidence of the injury as he claimed it to be. A like examination was made, without objection, by the physician of the defendant, who denied that profert of appellee's back furnished conclusive proof that one of his vertebræ had been fractured, as was claimed by appellee's physician. The evidence further showed that appellant had been afforded an opportunity to have X-ray pictures of appellee's back taken by Dr. Sanerman of Houston, an alleged expert, who presumably was impartial in the matter, inasmuch as he was not personally known to the appellee or either of his counsel. The appellee's counsel at this time objected to having such pictures taken by a party in Waco, upon the ground that they doubted his competency. This was some time before the trial. The Waco party referred to is the same party whom appellant requested should be permitted to take such pictures during the trial. Appellee's counsel agreed that if the X-ray picture was taken by Dr. Sanerman he would make no objection to its introduction in evidence. The introduction of an X-ray picture taken by an incompetent person might have proven very prejudicial to appellee. The Waco party may have been competent, but appellee's counsel did not think so, and the court was justifiable in not compelling appellee to have an X-ray picture taken by a party who was objectionable to him, when he had offered to have such picture taken by a party whose competency and disinterestedness was not called in question.

Assignments Nos. 8 and 9 were overruled for the same reason that we overruled the tenth assignment.

Believing that we committed no error in affirming the judgment herein, the appellant's motion for a rehearing is overruled.

Overruled.

KEY, C. J. (dissenting). The writer adheres to the dissenting opinion heretofore filed, but does not concur with his Associates in the statement in the majority opinion this day filed, to the effect that his dissenting opinion overrules all the decisions construing the act of 1913, holding that, in order to preserve an objection to the action of the trial court in giving or refusing instructions, it is necessary for the complainant to bring up in the transcript a bill of exception showing that he made such objection within the time prescribed by the statute. In this case the transcript shows that appellant, in proper time, and manner, requested the court

to give a special charge instructing the jury that the burden of proof was upon appellee to show by preponderance of the evidence that the wreck in question was caused by one or more of the acts of negligence complained of in his petition; and the record contains a bill of exception to the action of the court in refusing to give that charge. Appellant has assigned error upon that ruling, and but for the bill of exception referred to I would concur in the holding that appellant is precluded from complaining of the action of the court in refusing to give that charge. In the original majority opinion it is said:

"The charge of the court in placing the burden on the defendant to establish by preponderance of the evidence its lack of negligence was erroneous, and the special charge requested is the law of the case and should have been given."

That opinion then proceeds with an attempt to show that, notwithstanding the error in the court's charge and the error in refusing to give the requested charge, appellant is not entitled to have the case reversed because of the fact that it did not reserve a separate bill of exception to the charge of the court placing the burden of proof upon appellant. That ruling is founded upon the conclusion that, inasmuch as the record fails to show that appellant presented to the trial court an objection to that identical portion of its charge, and reserved a separate bill to the action of that court in overruling such objection, it must be held to have approved the court's charge in so placing the burden of proof upon appellant, and that the question of the refusal of the court to give appellant's requested instruction placing the burden of proof upon appellee must be dealt with by this court as though appellant had specifically requested the court to charge that the burden of proof was upon appellant. In other words, the holding is that appellant is in the same attitude as it would be if it had requested the court to give charges diametrically opposed to each other and the court had given the one which stated the law incorrectly, in which event it is held appellant would have no right to complain of the action of the court in refusing to give the one which stated the law correctly; and that conclusion is reached because the Thirty-Third Legislature, in amending article 1971 of the Revised Statutes, declared that objections not made to a charge before it is read to the jury shall be considered as waived; and also amended article 2061, so as to make it read that:

"The ruling of the court in the giving, refusing or qualifying of instructions to the jury shall be regarded as approved unless excepted to as provided for in the foregoing articles."

Two of the foregoing articles referred to are 2058 and 2059, the former providing that any party dissatisfied with any ruling, opinion, or other action of the court may except thereto at the time the same is made or announced; and the latter declaring that:

"No particular form of words shall be required in a bill of exceptions; but the objection to the ruling or action of the court shall be stated with such circumstances, or so much of the evidence as may be necessary to explain it, and no more, and the whole as briefly as possible."

As stated in the former dissenting opinion, the writer believes that the purpose of the Thirty-Third Legislature in passing the act referred to was to require an appellant, if dissatisfied with the law of the case as presented by the trial court to the jury, to make his objection to that court before the case is submitted to the jury, in order that the charge may be revised and corrected before it is read to the jury; and whatever is sufficient to apprise that court of the specific objection to a charge given or to the refusal to give a charge requested is, in my opinion, a substantial compliance with the law as enacted by the amendment referred to.

As a matter of fact, the record in this case shows that appellant filed in the court below written objections to the court's charge, including that portion of it which placed the burden of proof upon appellant; but the record does not show that the objections referred to were called to the attention of or ruled upon by the court, and therefore I concede that the appeal is to be disposed of as if the document referred to had not been filed. My view of the question is that, as appellant has brought up a bill of exception to the action of the trial court in refusing to give its requested instruction placing the burden of proof upon appellee, it should not be held that it has acquiesced in and approved the charge of the court placing the burden of proof upon appellant. The Legislature has declared that in order to preserve a bill of exception no particular form of words shall be required, and has further declared, in substance, that all that is necessary to constitute such bill is a document signed by the judge showing the objection to the particular ruling or action, and the statute declares that the document referred to shall be as brief as possible. In this case the only question as to the burden of proof was whether the law placed it upon the plaintiff or the defendant, and the latter has reserved a bill of exception to the action of the court in refusing to give a charge which would have placed the burden of proof upon the plaintiff. It is impossible that the burden of proof as to a particular matter can at the same time rest upon each party; if it be placed upon one, it cannot rest upon the other, and therefore, when appellant requested the court to instruct the jury that the burden of proof was upon the plaintiff, it seems absurd to say that at the same time appellant approved the charge of the court placing the burden of proof upon it. And yet the construction which the majority of this court has placed upon the statute leads to that result. Appellant's bill of exception to the refusal to give its requested charge placing the burden of proof upon appellee constitutes, in substance and essence,

a protest against the court's charge placing that burden upon appellant, and, though not in the shape of a formal bill of exceptions to that paragraph of the court's charge, it should be so treated because it is a substantial compliance with article 2059, prescribing the requisites of such bills and commending brevity in their preparation. At any rate, inasmuch as appellant, in the manner prescribed by statute, is crying aloud in this court, as it did in the court below, against the action of the trial court in refusing to give the requested charge placing the burden of proof upon appellee, I am not willing to hold that that cry is converted into silence and rendered inaudible by the fact that appellant has not made a similar cry against the charge of the court stating the law directly the reverse of the requested charge. In my opinion, such a construction pays too much deference to literalism and not enough to the spirit and purpose of the statute. Padgitt v. Ft. W. & R. G. Ry. Co., 104 Tex. 249, 136 S. W. 442.

Nor is the writer able to agree with the statement in the majority opinion this day filed, to the effect that rule 62a "does no more than to make clear what has always been the correct practice in this state, viz., not to reverse a case on account of immaterial errors of law committed on the trial." At the time that rule was adopted, it was well settled in this state, as announced by the Supreme Court in Railway Co. v. Johnson, 91 Tex. 572, 44 S. W. 1067, that when a charge is erroneous "it is presumed to have been injurious to the interests of the defendant, and 'in such case the duty does not devolve upon the party complaining to show that he was thereby injured, but upon him in whose favor the verdict was returned to show that the complaining party was not prejudiced by the error.'" Now rule 62a declares that no judgment shall be reversed on account of error committed in the trial court, unless the appellate court shall be of opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case. In other words, although the Supreme Court had previously held in the Johnson Case, and in many others, that when material error is shown injury to the complaining litigant will be presumed, and that no burden rests upon him in that regard, rule 62a declares that in such case the judgment shall not be reversed unless, in addition to showing error which might have caused injury, the complaining litigant must also show that it probably had that effect. So, if the language of that rule is to be given its ordinary signification, it would seem that, instead of rendering certain the law as it then existed, it was the purpose of the rule to materially change the law and, in effect, overrule former decisions of the court which made the rule. But although this is apparently the plain meaning of the rule, for reasons stated in his former opinion, the writer is not willing to accept that construction of it as the law by which this court is to be governed until the Supreme Court, in the decision of a case, shall overrule its former decisions, including Railway v. Johnson, supra—a contingency not anticipated.